Statement.

## Staunton.

### KNIGHTS OF PYTHIAS V. WELLER & OTHERS.

#### OCTOBER 1, 1896.

1. CORPORATIONS—*Expiration of Charter—De facto   Corporation.*—When the limit of corporate existence is fixed, either by charter or general law, the corporation is dissolved when that limit is reached, without any action to that end either by the State, or the members of the corporation.   Thereafter it is without power to adopt by-laws, or do other like acts.   It cannot set up the defence of by-laws made by it as a *de facto* corporation to avoid its contracts.

2. CORPORATIONS—*Effect of General Laws on Charter—Acts of Congress (1884), Omitting Limitation on Duration of Charter.*—General laws affecting corporations form as essential parts of the charters of said corporations as though copied into them.   The Act of Congress of 1884 which struck out from the general law the twenty-year limitation previously imposed on all charters, was entirely prospective, and applied only to corporations thereafter chartered.

3. PLEADING—*Variance Between Declaration and Proof.*—If a declaration avers that the contract sued on was made by the defendant corporation, and the proof shows that the contract was in fact made by another corporation whose liabilities had been assumed by the defendant, but there is no averment in the declaration that the liability had become that of the defendant, there is a variance between the allegation and the proof, and the latter should be rejected.

Error to a judgment of the Corporation Court of the city of Staunton, rendered May 22, 1895, in an action of covenant wherein the defendants in error were the plaintiffs, and the plaintiff in error was the defendant.

*Reversed.*

This was an action of covenant on an insurance policy. The following are copies of the policy and of the declaration thereon:

" Certificate of membership—Fourth Class.

" No. 13645.                                      $1000.

" Endowment Rank of the Order of Knights of Pythias.

" This certifies that Brother William H. Weller received the Endowment Rank of the order of Knights of Pythias in Section No. 520, on November 9, 1881, and is a member in good standing in said Rank. And in consideration of the representations and declarations made in his application, bearing date October 14, 1881, and his absolute surrender of the certificate heretofore held by him in first class for cancellation, as requested in his application for transfer to the fourth class bearing date of October 21, 1885, all of which is made a part of this contract, and the payment of the prescribed admission fee; and in consideration of the payment hereafter to said Endowment Rank of all monthly payments as required and the full compliance with all the laws governing this Rank, now in force or that may hereafter be enacted, and shall be in good standing under said laws, the sum of one thousand dollars will be paid by the Supreme Lodge of Knights of Pythias of the World, to his wife and children as directed by said brother in his application, or to such other person or persons as he may subsequently direct, by change of beneficiary, entered upon the records of the Supreme Secretary of the Endowment Rank; upon due notice and proof of death and good standing in the Rank at the time of his death and surrender of this certificate. Provided, however, that if at the time of the death of said brother, one monthly payment to the Endowment Fund by members holding an equal amount of Endowment, shall not be sufficient to pay the amount of Endowment held by said brother, the benefit to be paid in case of death, shall be a sum equal to one payment to the Endowment Fund by each member holding an equal amount of Endowment. And it is understood and agreed that any

violation of the within mentioned conditions, or the require-
ments of the laws in force governing this Rank, shall ren-
der this certificate and all claims null and void, and that the
said Supreme Lodge shall not be liable for the above sum
or any part thereof.

"In witness whereof we have hereunto subscribed our
names and affixed the seal of the Supreme Lodge Knights
of Pythias of the World.

JNO. VAN VALKENBURG,
Supreme Chancellor.

"R. E. COWAN, Supreme Keeper of Records and Seal.    Is-
sued this 25th day of November, 1885—pp. xxii, at Wash-
ington, District of Columbia, and registered in book 1, folio
273.

HALM NELSON, Supreme Secretary."

DECLARATION.

"Maggie S. Weller in her own right, and Sadie M. Weller,
Alexander Taylor Weller, Bessie Brown Weller, Lillian Wad-
dell Weller, Margaret May Weller, and William H. Weller,
by Maggie S. Weller their guardian and next friend, com-
plain of the Supreme Lodge Knights of Pythias, sometime
known as Supreme Knights of Pythias of the World, a cor-
poration doing business under the laws of the United States,
of a plea of covenant broken, for this, to-wit:

"That heretofore, to-wit: On the 25th day of November,
1885, by a certain certificate or policy of insurance then and
there made, the original of which, in writing and sealed with
the common seal of the defendant corporation, is hereto an-
nexed and made a part of this complaint, it was witnessed
that the said defendant corporation in consideration of the
payment of the prescribed admission fee, and in considera-
tion of the payment of all monthly payments as required and
for certain other good and sufficient and valuable considera-

tions, in said certificate or policy set out, did agree to pay to the said plaintiffs the sum of one thousand ($1,000) dollars, upon due notice and proof of the death of William H. Weller, and his good standing in the Endowment Rank of said Supreme Lodge, at the time of his death, and to the said certificate or policy contained and to the same annexed were and are sundry other provisos, conditions, prohibitions and stipulations, as by the original certificate or policy aforesaid, which is filed herewith, will more fully and at large appear. And the said plaintiffs in fact say, that at the time of making the said certificate or policy, and from thence until the time of the death of the said William H. Weller, hereafter mentioned, she, the said Maggie S. Weller, was the wife of the said William H. Weller; and the said Sadie W., Alex. T., Bessie B., Lillian W., Margaret M., and William H. Weller, are the children of the said William H. Weller; and the said wife and children, as aforesaid, as such, had a valuable and insurable interest in the life of the said William H. Weller, to the extent of the amount in said certificate or policy insured; and the said plaintiffs say, that after the making of the said certificate or policy as aforesaid by the said defendant, to-wit: on the      day of      , in the year 1893, the said William H. Weller departed this life, whereof and of his good standing in the said Rank at the time of his death, afterwards, to-wit: On the      day of      , in the year 1893, due and sufficient notice and proof was made to the said defendant, in conformity to the terms and conditions of the said certificate or policy. And the said plaintiffs further say that the said William H. Weller, in his lifetime, did perform, fulfill, observe, and comply with, and the said plaintiffs since his death, have performed, fulfilled, observed, and complied with, each and all the conditions, provisos and stipulations in the said certificate or policy contained or to the same annexed, on the part and behalf of the said William H. Weller, to be performed, fulfilled, observed, and complied with, and neither

the said William H. Weller in his lifetime, nor the said plaintiffs at any time have violated any of the prohibitions in the said policy or certificate contained, according to the form and effect, true intent and meaning of the said certificate or policy.

"And plaintiffs say that although due and sufficient proof was made as aforesaid to the said defendant, of the death of the said William H. Weller and of his good standing in the said Rank at the time of his death, the said plaintiffs in fact say, that the said defendant corporation, although often requested so to do, did not nor would pay to the said plaintiffs the said sum of one thousand ($1,000) dollars or any part thereof, but hath hitherto wholly refused and neglected so to do, and therein failed and made default, contrary to the form and effect of the said certificate or policy of insurance, and of its said covenant by it in that behalf made as aforesaid. And so the plaintiffs in fact say that the said defendant, although often requested so to do, has not kept this said covenant so by it made as aforesaid, but hath broken the same, and to keep the same with the said plaintiffs, has hitherto wholly neglected and refused, and still doth neglect and refuse, to the damage of the said plaintiffs of $5,000.00, and therefore they bring their suit.

MAGGIE S. WELLER,

" In her own right, and Sadie M. Weller, Alexander Taylor Weller, Bessie Brown Weller, Lillian Waddell Weller, Margaret May Weller, and William H. Weller, by Maggie S. Weller, their guardian and next friend,

By Counsel."

" LYMAN CHALKLEY,

"R. E. R. NELSON, p. q."

There was a verdict and judgment for the plaintiffs for $1,000 and costs, and the defendant sued out this writ of error. The evidence sufficiently appears in the opinion of the court.

*Turk & Holt,* for the plaintiff in error.

*Chalkley & Nelson,* for the defendants in error.

HARRISON, J., delivered the opinion of the court.

In 1881 William H. Weller received from the Supreme Lodge Knights of Pythias of the World a certificate of membership for $1000 in the "Endowment Rank," which is in effect the insurance branch of the order. In 1885, upon his own application, he was transferred from the first to the fourth class of the insured, surrendering his original certificate, and receiving in lieu thereof a new certificate or policy, which is the one sued on in this action. He remained a member in good standing, continuing to pay his dues and assessments from the time he became a member of the order until his death, which occurred September 11, 1893.

This action of covenant is brought by his widow, Maggie S. Weller, in her own right, and as guardian and next friend of her children, against the "Supreme Lodge Knights of Pythias" to recover the amount of said policy, it being for her and their benefit, and payable to them. In addition to the general issue, the defendant Society filed two special pleas upon which issue was joined, which set forth in substance that the deceased had voluntarily taken his own life, and that, under a by-law of the association which constituted in part the contract of the assured with the defendant, his right to recover was forfeited.

Upon the trial, the defendant Society offered to prove that the assured did voluntarily destroy himself, but this evidence was rejected by the court for the reason that the matter sought to be proved did not constitute a defence in the absence of a contract relieving the Society from liability for death from suicide, and that the by-law set out with the defendant's plea, and relied on as showing such a contract, was

void in so far as it affected the deceased. This ruling was excepted to, and constitutes one of the assignments of error.

It appears from the record the Supreme Lodge Knights of Pythias of the World was incorporated in the District of Columbia in the year 1870, under and in accordance with an act of Congress entitled "An act to provide for the creation of Corporations in the District of Columbia by general law," approved May 5, 1870.

This general law provided that the life of all corporations formed under it should be limited to twenty years.

The by-law relied on by the defendant to defeat the recovery in this case purports to have been adopted as an amendment to the existing laws at a regular meeting of the Board held January 12th and 13th, 1893—more than two years after the time fixed by law when the life of the corporation should cease.

The record shows that a special committee on incorporation, appointed for the purpose, reported in September, 1894, to the Society, that after a careful examination they had found that the charter granted the Supreme Lodge Knights of Pythias of the World had expired by limitation, and, deeming it of great importance that the order should be legally incorporated, they had procured from Congress an Act of Incorporation, dated June 29, 1894. This new act incorporated the order as the "Supreme Lodge Knights of Pythias," leaving off the words " of the world."

It is contended by the defendant Society that this act of incorporation was a mere continuation of the original charter, that the new charter of 1894 was not necessary, but was secured only out of abundant caution; and further that, even if the original charter expired in 1890, the Society was a *de facto* corporation, continuing its regular business, and that the question of its legal existence was one that could only be raised by the power which created it, and not by a member, or any one claiming under him; that the provision in

the new charter "that all claims, debts, accounts, things in action or other matters of business of whatever nature now existing for or against the present Supreme Lodge Knights of Pythias, mentioned in section one of this act, shall survive, and succeed to and against the body corporate and politic hereby created," is a declaration of the existence of the corporation of 1890 by the power which created it. These contentions cannot be sustained.

When the limit of corporate power is fixed, the corporation is dissolved when the period of limitation is reached, with all the consequences of a dissolution by any other mode. In 5 Thomp. Corp., sec. 6651, the law is stated thus : " If the charter or governing statute of the corporation fixes a definite period of time at which its corporate life shall expire, when that period is reached, the corporation is *ipso facto* dissolved, without any direct action to that end, either on the part of the State, or of its members; and no powers created by the charter or governing statute can thereafter be exercised, except such as are continued by force of the statute law for the purpose of winding up its affairs."

When the twenty years life of the charter of 1870 had expired, the corporation as such was dead, and it was absolutely without power to adopt the by-law relied on in this case. Nor did those who took charge of the affairs and assets of the corporation, after its charter had expired, have power to pass such a by-law.

The provision in the new charter, already quoted, binds the new Society to pay all the liabilities of the old, in the most unqualified and unconditional way; but it does not, as claimed, revive the old corporation, or give any life to the by-law now relied on by the defendant.

Inasmuch as the new charter makes no allusion to this by-law, it is to be presumed that Congress did not intend that the forfeiture contained in it should survive to the new corporation.

There was no error in the ruling of the lower court reject-
ing the evidence of suicide until the defendant had estab-
lished a contract with the assured relieving it from liability
for death from suicide; and it follows from what has been
said that there was no error in holding further that the by-law
set out in the defendant's special plea, and relied on as the
evidence of such a contract, was void in so far as it affected
the deceased.

The defendant Society further insists that inasmuch as
the twenty-year limit to the corporation of 1870 was not em-
bodied in its charter, but only found in the general law au-
thorizing such charters to be created, and as Congress in
1884 passed an amendment to said general law striking out
the twenty-year limit, the life of said corporation thereby
became indefinite.

This position is not tenable.   It is not necessary that the
general law should be copied in the charter.   It forms an
essential part of it, and all parties are bound by its terms,
whether copied in the charter or found only on the statute
book.   The amended act of 1884 striking out the twenty
year limit only applied to corporations thereafter chartered.
It had no application to corporations in existence at the
time it was passed.   A statute does not have a retroactive
effect unless clearly expressed, or necessarily implied.

As already shown, the new Society undertook to pay the
liabilities of the old, as one of the terms and conditions of
its incorporation; and this action of covenant is brought by
the plaintiffs against the new Society, and the policy or cer-
tificate issued to deceased in 1885 is declared on as having
been issued by the defendant Society, and the declaration
contains no allegation that the liability had become that of
the defendant.

Upon the trial the defendant moved the court to strike
out the evidence of the plaintiffs, upon the ground that the
declaration did not allege that the liability sought to be

enforced had become the liability of the defendant Society chartered in 1894. On the contrary, it appeared from the evidence produced by the plaintiffs, that the obligation sued on was a covenant made by the corporation which expired in 1890. This motion was overruled by the court and the ruling excepted to.

No question has been raised as to the form of action adopted in bringing this suit. Ordinarily, assumpsit would seem to be the proper action under the circumstances here disclosed, and it has not been without doubt, that the conclusion has been reached to sustain the action of covenant in this case. The language used by the defendant in its charter, in acknowledging the liabilities of the old Society as its own, would seem to be broad enough to justify the same form of action against the Society taking upon itself the liability that could have been maintained against the Society issuing the policy. It was, however, essential that the declaration should allege that the debt sued for had become that of the defendant. The evidence must be confined to the issues made by the pleadings. There was a variance between the allegations and the proof, and the defendant's motion to strike out the plaintiffs' evidence ought to have been sustained.

As this case must be sent back for a new trial, it becomes unnecessary, and would be improper, to pass upon other assignments of error that may not arise on the next trial, or might arise, if at all, in a different form.

For the error of the court in overruling the defendant's motion to strike out the plaintiffs' evidence because it did not correspond with the allegations of the declaration, its judgment must be reversed, the verdict set aside, and the cause remanded to the Hustings Court for a new trial to be had therein, with direction to grant leave to the plaintiffs to amend their declaration, if they shall be so advised.

*Reversed.*