# Richmond

## G. MARK FRENCH v. CUMBERLAND BANK AND TRUST CO.

January 26, 1953.

Record No. 4038.

Present, All the Justices.

The opinion states the case.

*Vernoy B. Tate,* for appellant.

*Combs, Combs & Street, Norman S. Elliott,* for appellee.

*Hunton, Williams, Anderson, Gay & Moore, George D. Gibson, John W. Riely,* amici curiae.

HUDGINS, C. J., delivered the opinion of the court.

G. Mark French prosecutes this appeal from an order of the State Corporation Commission, hereinafter designated "Commission," permitting the Cumberland Bank and Trust Company of Grundy, Virginia, hereinafter referred to as "Bank," to amend its charter so as to provide for a maximum capital stock of $500,000, consisting entirely of 10,000 shares of common stock of the par value of $50 each, and to abolish cumulative voting for directors.

Appellant attacks the order on two grounds: (1) the notice calling a special meeting of the stockholders of the Bank to act upon resolutions adopted by the directors proposing amendments to the charter "failed to set out properly and correctly the object and purpose of the said special stockholders' meeting" as required by law, and (2) Chapter 68 of the Acts of 1952, providing that charters of certain banks might be amended by a vote of two-thirds in interest of its stockholders so as to abolish cumulative voting, is unconstitutional and void.

The notice to the stockholders fairly stated the object of the meeting and clearly advised the stockholders that they would be asked to vote upon resolutions adopted by the board of directors proposing amendments to the Bank's charter for the purpose of eliminating stock classification and abolishing cumu-

lative voting, and to "pass upon any and all other matters incident to carrying out the aforesaid Resolution." No stockholder could have been misled by the notice. Appellant certainly was not. He was present at the meeting and voted not only his own stock, but proxies held by him for others, against the resolutions. At the stockholders' meeting 3106 out of a total of 3180 shares of stock issued and outstanding were represented either in person or by proxy. The resolutions were approved by a vote of 2644 shares, or 85.48% of the shares present, and 83% of the total shares outstanding. Seventy-four shares were not represented and 462 shares, or 14.52%, opposed the resolutions. There is no merit in appellant's first contention.

█ It is conceded that the facts bring appellee Bank squarely within the provisions of Chapter 68 of the Acts of 1952, which is as follows:

"*An Act to permit banks to amend their charters under certain conditions.*

Approved February 18, 1952

"Be it enacted by the General Assembly of Virginia:

"1. Any bank that sold preferred stock to the Reconstruction Finance Corporation, and in connection with the sale, amended its charter so as to provide for cumulative voting, may, at any time after the Reconstruction Finance Corporation no longer owns any preferred stock issued by the bank, amend its charter so as to abolish cumulative voting by a vote of two-thirds in interest of its stockholders in the manner provided by § 13-35.1 of the Code of Virginia.

"2. An emergency exists and this act is in force from its passage."

If the Act is valid, the Commission was fully justified in its approval of the amendments to the Bank's charter. This brings us to appellant's main contention; namely, that the Act is unconstitutional because it is special or class legislation, prohibited by Sections 63 (17) and 154 of the Virginia Constitution.

Neither the Virginia Constitution nor the fourteenth amendment to the Constitution of the United States forbids the enactment by the legislature of a law which applies to a class only, provided the classification is reasonable and not arbitrary, and applies alike to all persons similarly situated. The classification, when made, is presumed to be necessary and reasonable. If any state of facts can be reasonably conceived that would sustain the

Act, the existence of that state of facts at the time the law was enacted must be assumed. The classification must be natural and reasonable and appropriate to the occasion. There must be some such difference in the situation of the subjects of the different classes as to reasonably justify some variety of rule in respect thereto. *Martin's Ex'rs* v. *Commonwealth,* 126 Va. 603, 612, 102 S. E. 724; *Anthony* v. *Com.,* 142 Va. 577, 128 S. E. 633; *Buck* v. *Bell,* 143 Va. 310, 130 S. E. 516; *Green* v. *County Board,* 193 Va. 284, 68 S. E. 2d, 516. We must, therefore, determine whether such presumed difference in the situation of Virginia banks has been shown not to exist in fact.

The financial status of the banks in Virginia, the reasons which led to the passage of the Act in question, and its purpose, are stated by the Commission in its opinion as follows:

"During the depression years of 1933 and 1934, the Bank, like so many others in the State and nation, suffered severe losses and was in dire need of additional capital. The only practical source of such capital at that time was the RFC (Reconstruction Finance Corporation). Negotiations between the Bank and the RFC resulted in a commitment by RFC to invest $25,000 in the Bank. RFC agreed to invest this $25,000 in preferred stock of the Bank, which could be redeemed and retired by the Bank when its finances improved to such point that this was practicable. This was the usual method followed by RFC to assist banks which needed rehabilitation; in fact, by the end of 1934, 95 of the 196 State banks in Virginia had sold preferred stock in the amount of $6,547,250 to the RFC in a similar manner to obtain additional capital with which to weather the financial storm which was then raging. This additional capital, supplied by RFC in the form of investment in preferred stock, was, as a matter of fact, in the nature of a loan, because the RFC was not interested in stock ownership in banks, but in rehabilitation of the banks and recovering its investment. For this reason, RFC required that the preferred stock issued for this invested capital give RFC protection in the form of control of the Bank in the event the Bank did not prosper and place itself in a position to pay back the loan by retiring the preferred stock. In order to safeguard its investment, RFC required of the Bank, as well as of all other banks that obtained RFC funds, that the preferred stock contract should:

"(1) Provide 5% cumulative dividends payable semiannually;

"(2) Place severe restrictions on dividends on common stock;

"(3) Define strictly net profits for the purpose of declaring dividends and the manner in which net profits be applied;

"(4) Define and place restrictions and limitations on the retirement and redemption of the preferred stock;

"(5) Provide for preemptive rights;

"(6) Provide for cumulative voting for directors, and in case of default in payment of dividends on the preferred stock, place the preferred stock in virtual control of the Bank; and

"(7) Define its liquidation rights.

"These requirements of RFC in making loans to banks were so standard that whenever a bank issued preferred stock to RFC for capital invested by RFC, RFC furnished a mimeograph form for amendments to the bank's charter so that RFC requirements could be met without question.

"In February, 1934, negotiations between the Bank and the RFC for the $25,000 capital to be advanced by RFC were completed and the Bank on February 10, 1934, reduced the par value of its common stock by 50% and amended its charter in the usual way by a two-thirds vote to meet all the requirements of RFC as to the preferred stock. Included in these requirements was the provision for cumulative voting for directors.

"After the advance by RFC of the $25,000, the Bank succeeded in weathering the storm and in more recent years has prospered; in fact, so much so, that it recently paid a 200% stock dividend and also sold its $50.00 common stock at $160.00 per share in order to raise funds to redeem and retire the preferred stock it had sold to RFC. In March of this year, it redeemed and retired this preferred stock. It then undertook to eliminate from its charter, by the amendment tendered to the Commission, all provisions which had been inserted at the instance of RFC in connection with the issue of the preferred stock * * *.

\* \* \* \* \* \*

"The 1952 Act applies to any bank in Virginia that sold preferred stock to the RFC, and in connection with the sale thereof amended its charter so as to provide for cumulative voting. All of the ninety-five banks in Virginia that sold preferred stock to

the RFC to obtain capital funds amended their charters so as to provide for cumulative voting. This was a requirement of RFC to protect its investment. RFC demanded that it be adequately represented on the boards of directors of these banks in order that it be in position to keep itself fully informed as to the banks' operations and to insure that their policies were in line with the protection of RFC interests. Each was required to amend and did amend its charter so as to provide for cumulative voting. As conditions improved after the depression, this preferred stock was gradually redeemed, until in 1951 there were only 12 out of 181 State banks in Virginia with preferred stock held by RFC. This does not mean, however, that the 1952 Act applies only to these 12. It applies to the original 95. It is not sufficient that RFC may have been paid off by the other 83 who redeemed their RFC preferred stock between 1934 and 1951 to take from them the benefit of the 1952 Act. In each case, a charter amendment was, and is, necessary in addition to redemption of the preferred stock, to eliminate cumulative voting for directors, which had been inserted at the instance and for the protection of RFC in connection with the capital funds it had invested in the purchase of preferred stock.

"Cumulative voting for directors is a device which does not ordinarily appear in charters granted by the Commission. Under Section 13-203 of the Code it may be incorporated in an original or amended charter. In all of its experience, the Commission recalls no case where cumulative voting was voluntarily inserted in a bank's charter. In the case of the 95 banks that obtained RFC funds and sold preferred stock for such funds, cumulative voting was not inserted at the request of the directors or stockholders but because RFC required and demanded that it be done. In such cases, it could be inserted by an amendment, voted by a two-thirds vote. The 1952 General Assembly evidently thought that if cumulative voting could be inserted by a two-thirds vote when required by RFC as a part of the purchase of preferred stock, in all fairness, it should be removed by a two-thirds vote when the reason for its insertion in the first place, namely ownership of preferred stock by RFC, had been removed.

"In the circumstances, the General Assembly considered that these banks should be permitted to resume normal operations on the redemption of such stock. This stock passed out of existence

when it was redeemed and retired and the reason for cumulative voting ceased to operate. The General Assembly, in enacting the 1952 Act, did not act arbitrarily, but recognized a practical classification of banks, which by means of the Act could be returned to normal functions and operations by a simple amendment adopted by a two-thirds vote in the usual manner.''

Chapter 68 of the Acts of 1952 applies to all banks in Virginia that obtained financial aid from the RFC and as a condition precedent, were compelled to obtain amendments to their charters providing for cumulative voting. It does not apply to banks that did not obtain such financial aid. Whether such classification is reasonable is a question primarily for the legislature. It is presumed to be necessary and reasonable and the court will not substitute its judgment for that of the legislature, unless it is clear that the legislature has not made the classification in good faith. We conclude that the classification of banks made by this Act is within the principle stated in *Newport News* v. *Elizabeth City Co.*, 189 Va. 825, 841, 55 S. E. 2d 56, as follows: ''The test of reasonableness of classification is said to be whether it embraces all of the classes to which it relates. The basis of the classification involved must have a direct relation to the purpose of the law, and must present a distinction which renders one class, in truth, distinct or different from another class.''

Appellant also contends that the Act is invalid as to him because a vote of less than 90% in interest of the stock has deprived him of a vested right. He argues that under the cumulative voting clause he, as owner of slightly more than 1/10 of the capital stock, could control the election of at least one director, and that in order to deprive him of this right, a vote of 90% in interest of the stock was necessary, as required by Section 13-90 of the Code.

It is true that a change in the charter provisions whereby the right of cumulative voting is eliminated is a substantial change in the voting rights of each share. Under the method of cumulative voting, the holder of one share of stock voting on 10 vacancies to be filled on a board of directors may cast ten votes for a single candidate. This method frequently enables the minority stockholders to obtain representation on the board of directors which would not otherwise be possible. The result is quite different from that where the proposed amendment to the charter simply grants the privilege of issuing additional stock. In such

event, the new shares of stock have equal voting rights. It reduces the proportionate power of all stockholders, but does not change the voting rights held by the old stockholders in respect of their existing shares.

The General Assembly, by enactment of a general law (Chapter 68 of the Acts of 1952) has, it is true, authorized cumulative voting for directors of the banks of the class named to be abolished by the approval of 66-2/3% in interest of shares of stock instead of 90% in interest. But appellant acquired and held his stock with full knowledge that the voting rights of his shares of stock for directors might be changed by general law, with or without his consent. Section 158 of the Virginia Constitution provides that every corporation holds "its charter and franchises, and all amendments thereof, under the provisions and subject to all the requirements, terms and conditions of this Constitution, and of any laws passed in pursuance thereof, so far as the same may be applicable to such corporation."

 The Act in question is a general law, the enactment of which is not prohibited by any provision of the Virginia Constitution. The pertinent constitutional provisions were construed in *Winfree* v. *Riverside Cotton Mills,* 113 Va. 717, 75 S. E. 309, where it is said: "The provision that the charter shall be held after such amendment under the provisions and subject to all the requirements, terms, and conditions of the Constitution, and of any laws passed in pursuance thereof, so far as applicable, is not limited to the relations between the State and the corporation, but applies as well to the relations between the State and the stockholders, the corporation and the stockholders, and between the stockholders themselves.

"That this is the construction which should be placed upon the language used is shown by the construction which has generally, if not universally, been placed upon the language reserving the power to the State to amend, alter, or repeal a charter. Although the power reserved is to alter, amend, or repeal the charter, it is not limited to changes or alterations solely between the State and the corporation, but authorizes amendments and alterations, within certain limitations, directly affecting the stockholders in their relations to the State, to the corporation, and to each other."

It was suggested in the argument that inasmuch as the amendment incorporating the right to cumulative voting was

made on the approval of two-thirds in interest of the shares of stock, such right could be abolished by a like two-thirds consent, and that this could be accomplished under the provisions of Code, sections 13-35 and 13-35.1, and that the passage of Chapter 68 of the Acts of 1952 was unnecessary to accomplish this purpose. We are unable to concur in this view. Section 13-90 provides: "No corporation * * * shall, without the consent of ninety per centum in interest of the class or classes of stockholders affected thereby, have the power to change the voting rights * * * of any stockholder * * *."

It was also stated in the argument that if it was necessary for 90% in interest of the stockholders to approve the amendment to the Bank's charter, adopting the method of cumulative voting, such amendment was not legal, as only 2/3 in interest consented thereto, and that no amendment to the charter resulted. This does not follow. Section 156 (d) of the Virginia Constitution provides: "No court of this Commonwealth (except the Supreme Court of Appeals, by way of appeal as herein authorized) shall have jurisdiction to review, reverse, correct or annul any action of the commission, within the scope of its authority, or to suspend or delay the execution or operation thereof * * *."

Section 13-35.1, among other things, provides that all applications for amendments to charters "shall be presented to the State Corporation Commission which shall ascertain and declare whether the applicants, by complying with the requirements of law, have entitled themselves to the amendment or alteration or extension applied for, and shall issue or refuse the same accordingly."

This court held in *Reynolds* v. *A. M. Bus Line,* 141 Va. 213, 126 S. E. 201, that the only remedy a litigant had from an erroneous order of the Commission was by appeal to this court, and if the appeal was not perfected within the time prescribed by law, the order was conclusive upon the parties. "It is wholly immaterial whether it (the order of the Commission) was right or wrong * * *. The only remedy of the appellant was by appeal to this court of which he did not avail himself within the time prescribed by law.

\* \* \* \* \* \*

"* * * However inadvertent the order may have been, however erroneous, it was not void, and could only have been set aside by an appeal to this court."

Whether the Commission was right or wrong in granting the amendment to the charter of the Bank creating the right of cumulative voting for directors on the consent of less than 90% in interest of shareholders, its order was final and conclusive, since no appeal was taken from it within the time prescribed for such appeals.

The order of the Commission is affirmed.

*Affirmed.*