**BARRIS INDUSTRIES, INC., et al., Plaintiffs,**

**v.**

**D. Tennant BRYAN, et al., Defendants.**

**Civ. A. No. 88–0188–R.**

United States District Court,
E.D. Virginia,
Richmond Division.

May 13, 1988.

---

Jack B. Russell, John H. OBrion, Jr., John S. Graham, III, Ann Adams Webster, Richard K. Bennett, Browder, Russell, Morris & Butcher, P.C., Richmond, Va., Edward S. Brodsky, Wm. J. McSherry, Jr., Spengler, Carlson, Gubar, Brodsky & Frischling, New York City, for plaintiffs Barris Industries, Inc., Giant Group, Ltd., and KCC Delaware Co.

Stephen W. Bricker, Bremner, Baber & Janus, Richmond, Va., Nicholas E. Chimicles, Ann Miller, Greenfield & Chimicles, Haverford, Pa., David Bershad, Wendy K. Goidel, Milberg, Weiss, Bershad, Specthrie, & Lerach, New York City, Arnold Levin, Levin, Fishbein, Sedran & Berman, Philadelphia, Pa., David Jaroslawicz, New York City, for plaintiffs Harvey M. Jasper and Sarah Shields.

R. Harvey Chappell, Jr., Jas W. Tredway, III, David C. Kohler, Stephen Larson, Christian, Barton, Epps, Brent & Chappell, Richmond, Va., Milton R. Ackman, Alexander R. Sussman, Fried, Frank, Harris, Shriver & Jacobson, New York City, for defendants.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, District Judge.

This case came before the Court on the defendants' motion for summary judgment under Rule 56, Fed.R.Civ.P. By their motion, defendants sought dismissal of all claims alleged in the complaints filed in this action and in Civil Action No. 88–238–R. At a hearing on April 27, 1988, the Court granted summary judgment for the defendants, only on the seventh cause of action in the amended complaint filed by the plaintiffs Barris Industries, Inc., GIANT Group, Ltd. and KCC Delaware Company. As to all remaining claims alleged in both actions, the motion for summary judgment was denied. This Memorandum Opinion sets forth the Court's reasons for granting summary judgment on the seventh cause of action.

## I. BACKGROUND

This case presents a variety of issues arising out of an attempt by Burt Sugarman and his companies to gain control of defendant Media General, Inc. All of the plaintiffs are companies owned or controlled by Sugarman. The individual defendants are all officers or directors of Media General, Inc.

The plaintiffs together own more than ten percent of the outstanding shares of the Class A common stock of Media General, representing an investment of more than $100,000,000. Through his companies, Sugarman has proposed to Media General's board of directors a $1.6 billion merger, pursuant to which plaintiffs would take control of Media General, and all of Media General's shareholders would receive $61.50 per share. According to recent press accounts, the plaintiffs have since increased their offer to $70 per share, representing a total merger offer of approximately $1.78 billion. *See* Wall St. Journal, May 10, 1988, at 3, col. 3. As detailed *infra*, Media General has since rejected the plaintiffs' merger proposals.

Media General is a diversified media company headquartered in Richmond, Virginia. Its common stock is divided into two classes, Class A and Class B. The Company currently has nearly 28,000,000 shares of Class A stock outstanding, which are traded on the American Stock Exchange. It also has nearly 560,000 shares of Class B stock, which are not publicly traded. The Class B stock elects 70% of Media General's board of directors; the Class A stock, which represents some 98% of the Company's equity, elects 30% of the board, pres-

ently three of the Company's nine directors. Plaintiffs' Exhs. 1–3.

The defendants D. Tennant Bryan and J. Stewart Bryan, III (the Bryans), personally and through the "Media Trust" which they control, own or control approximately 70% of the Class B stock, representing 1.4% of the Company's equity. As a result of that stock ownership, the Bryans control the election of six of the nine directors serving on Media General's board. Pltfs' Exhs. 2 and 5.

On February 29, 1988, the plaintiffs first proposed a merger of Media General with a new entity controlled by Barris Industries, Inc. ("Barris") and GIANT GROUP, Ltd. ("Giant"), pursuant to which each Media General shareholder would receive $61.50 per share. By that merger, Sugarman and his plaintiff companies would gain complete control of Media General. The proposal was rejected by Media General because the Bryans stated that they would vote against it and, since their Class B stock was needed for approval of the merger, any further consideration would be futile. Pltfs' Exhs. 10, 12.

Four days later on March 3, 1988, James S. Evans, the chief executive officer and president of Media General, wrote to the plaintiffs to reject their offer. In his letter, Evans stated that because the Bryans had informed the board that the proposal was unacceptable to them, no further action by the board was appropriate. Pltfs' Exh. 15.

On March 9, 1988, plaintiffs again wrote to Media General, stating that they had increased their holdings to more than 10% of the outstanding Class A stock and again proposing a merger transaction with Media General. In this proposal, Media General would merge with a new entity controlled by the plaintiffs, such that Media General would be the surviving corporation. As a result, Media General would be owned and controlled by the plaintiff companies. As under the earlier proposal, all Media General shareholders would receive $61.50 per share. Pltfs' Exh. 16.

The plaintiffs' March 9 letter contended that, under a special voting provision in Media General's charter, the offer was subject only to the majority vote of all shareholders voting together as a single group, and thus was not subject to a veto by the Class B shareholders voting as a separate class. Media General promptly rejected the offer on the same day and for the same reasons previously given. Pltfs' Exh. 18.

The following Monday, on March 14, 1988, the board held a special meeting and refused to consider the plaintiffs' second proposal, on the ground that it was "futile" given the Bryans' opposition to any sale of their shares. Pltfs' Exh. 22. That same day, the Media General board issued a press release and sent a letter to the plaintiffs, formally rejecting the offer. Pltfs' Exhs. 23, 24.

Since first offering the merger proposal to Media General in the letters of February 29 and March 9, 1988, the plaintiffs have revealed more details of the merger in two affidavits filed with the Court. As disclosed in the affidavit of John S. Graham, III, counsel for the plaintiffs, the merger proposal contemplates the following:

> plaintiffs intend to cause the incorporation of a subsidiary which would adopt a plan of merger with Media General pursuant to which (a) the subsidiary and Media General would merge in a manner that Media General would be the surviving, and therefore the acquiring, entity; (b) the shareholders of the subsidiary would be issued Class A Common Stock and Class B Common Stock of Media General in the Merger; (c) the Class A and Class B shares of Media General so issued, which would be outstanding upon consummation of the Merger, would have precisely the same designations, rights, preferences and limitations as the Class A and Class B shares of Media General issued and outstanding prior to consummation of the Merger; and (d) upon consummation of the Merger, all other holders of Media General shares, .. would receive $61.50 per share in cash.

Graham Aff. at ¶ 3. As described by Michael Tennenbaum, a senior managing di-

rector with Bear Stearns & Co., financial adviser to the plaintiffs:

the plaintiffs' offer involves a merger, pursuant to which the plaintiffs would create a subsidiary and fund the subsidiary with cash assets. The subsidiary would be merged into Media General, pursuant to a plan of merger in which Media General would be the surviving company. Media General would issue additional stock in exchange for the stock of the subsidiary and its assets. The plaintiffs would receive that stock, and the cash from the subsidiary would be used to pay all of the other shareholders of Media General $61.50 per share.

Tennenbaum Aff. at ¶ 2. As already noted, these details of the merger proposal were not spelled out in the letters sent to the Media General board of directors. In fact, it appears that they were first disclosed in the affidavits cited above, which were signed on April 15 and 20, 1988.

In their amended complaint, the plaintiffs have alleged a number of claims against the defendants. The plaintiffs' primary contention is contained in their seventh cause of action, where they seek a declaration that their merger proposal need only be approved by a majority of the Class A and Class B shareholders voting together, not separately. This argument will be discussed in detail below.

In their first and second causes of action, the plaintiffs allege that the Bryans, as shareholders and directors, breached fiduciary duties of loyalty and due care in refusing to consider Sugarman's merger proposal. In the third cause of action, plaintiffs claim that the defendants have wasted certain corporate assets.

In the fourth cause of action, plaintiff Barris challenges Media General's 1987 proxy statement, claiming that the disclosures made in that document were materially false and misleading. The claim is brought under § 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a). Similarly, the fifth cause of action attacks Media General's 1988 proxy statement; plaintiffs claim that proxy statement is materially false and misleading, because it fails to disclose the existence of the plaintiffs' pending proxy fight and litigation with Media General.

Finally, the sixth cause of action alleges that the Schedule 13D filed by the Bryans with the Securities Exchange Commission violates § 13(d) of the Securities Exchange Act of 1934, 15 U.S.C. § 78m(d). Plaintiffs claim that the Schedule 13D contains material misrepresentations and omissions.

## II. DISCUSSION

### A. *The Claim: Seventh Cause of Action*

In their seventh cause of action, the plaintiffs contend that under Art. II(B)(3)(a) of Media General's charter, their merger proposal need be approved by *only* a majority vote of Class A and Class B shareholders voting together as a single group, and not as separate groups. By invoking this special voting clause, plaintiffs contend that the Class B shareholders are not entitled to vote as a separate voting group on the merger proposal. This argument, if correct, would deny the Class B shareholders (and the Bryan family) the power to veto any merger proposal to which they objected.

#### 1. *The General Voting Structure*

Since its incorporation in 1969, Media General has had two classes of common stock, Class A and Class B. As provided by the company's Articles of Incorporation ("Charter"), the principal difference between these two classes of stock lies in the voting rights of their respective shareholders. With limited exceptions and unless otherwise provided by law, "the entire voting power shall be vested solely and exclusively in the holders of the shares of Class B Common Stock...." Charter, Art. II(B)(2)(b); Defts' Exh. E at 2. All other classes of stock, including Class A, "shall have no voting power ... except as otherwise specifically set forth in these Articles or as may be required by law." *Id.* This voting arrangement is expressly permitted by Virginia law. Va.Code Ann. § 13.1–638(C).

The Charter does not explicitly discuss the procedures or vote necessary to approve a merger, but instead refers to the law of Virginia to define the voting rights of the respective classes of stock in the event of such a transaction. *See* Exh. E at 2. As seen below, Virginia law deals extensively with the procedures required for approval of a merger, including the rights of each class to vote as a separate group.

### 2. *The Equal Voting Provision*

The so-called equal or supplemental voting provision is set forth in Media General's charter, in Article II(B)(3)(a). The provision states that the Corporation, prior to taking "any of the actions listed below," must obtain the approval of both Class A and Class B shareholders, "voting together and not as separate classes ... by a majority vote at a duly called meeting of stockholders at which each share, regardless of Class, shall be entitled to one vote."

One such corporate action, on which combined shareholder approval is required, is:

(ii) The acquisition of the stock or assets of any company in the following circumstances:

(x) if any officer, director or holder of 10% or more of any class of shares of voting securities of the Corporation has an interest, directly or indirectly, in the company or assets to be acquired or in the consideration to be paid in the transaction;

Charter, Art. II(B)(3)(a)(ii)(x); Defts' Exh. E at 2. Therefore, where Media General sets out to acquire the assets or stock of another company in which an officer, director, or 10% shareholder of Media General has an interest, the Class A shareholders voting together with the holders of Class B stock, must "authorize" the board's action. Plaintiffs refer to this as the "Equal Voting Provision," while defendants have called it a "supplemental" voting requirement.

### B. *The Merits of the Claim*

The standard for granting summary judgment is well-settled: a claim may be dismissed only if there are no genuine issues of material fact and if, on the undis-

puted facts in the case, the moving party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P.; *see e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–56, 106 S.Ct. 2505, 2509–14, 91 L.Ed.2d 202, 211–16 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The relevant facts surrounding the seventh cause of action are undisputed in this case. On these facts, the defendants are entitled to a judgment on this claim as a matter of law, for several distinct and independent reasons.

### 1. *Approval by the Board of Directors*

■ Virginia law on this point is simple and clear: before the proposed merger can proceed, the merger must first be approved by the Media General board of directors. This requirement of board approval is separate and distinct from the requirement of shareholder approval. Indeed, the Virginia statute requires that the board of directors approve and adopt any plan of merger, *before* it submits or recommends the merger plan to the shareholders for their consideration. Va.Code Ann. §§ 13.1–716 and 13.1–718 (1985 Repl.Vol.)

There are two governing statutory provisions. First, Va.Code Ann. § 13.1–716(A) requires that "[t]he board of directors of each corporation shall adopt and its shareholders, if required by § 13.1–718, shall approve a plan of merger." In addition, § 13.1–718(B) provides that:

B. For a plan of merger or share exchange to be approved:

1. The Board of directors shall recommend the plan of merger or share exchange to the shareholders unless the board of directors determines that because of conflict of interests or other special circumstances it should make no recommendation and communicates the basis for its determination to the shareholders with the plan; and

2. The shareholders shall approve the plan as provided in subsection E of this section.

*See also* Va.Code Ann. § 13.1–718(A) ("After adopting a plan of merger or share exchange, the board of directors of each

corporation party to the merger ... shall submit the plan of merger ... or share exchange for approval by its shareholders").

Therefore, it is clear that under Virginia corporation law, no shareholder voting can take place on a merger proposal until after the board of directors has first adopted the merger plan and formally submitted it for a shareholder vote. *See* Murphy, *The New Virginia Stock Corporation Act: A Primer*, 20 U.Rich.L.Rev. 67, 121 (1985); Joint Bar Committee, *Commentary on the Revision of the Va.Stock Corporation Act* at 64 (1984); *reprinted in Report of Va. Code Commission*, Appendix No. 4 (1985) (included as Defts' Reply Exh. 2). It is undisputed that the plaintiffs have failed to win board approval for their merger proposal; in fact, the board of Media General expressly rejected the plan by letters and press releases issued between February 29 and March 14, 1988. Pltfs' Exhs. 12, 15, 18, 23–24. Nor have plaintiffs shown any means by which they can avoid or circumvent this statutory requirement. *See* Joint Bar Committee, *Commentary* at 64 (1984) (indicating that under § 13.1–716(A), the board is always required to adopt the plan, even if in some cases the board's "recommendation" is not necessary).

Because this board approval has not been obtained, and is not even remotely likely in the foreseeable future, the plaintiffs cannot reach the shareholders for their desired "equal vote" with all classes of shares voting together as one group. Accordingly, the seventh cause of action fails to state a claim upon which relief can be granted.

### 2. *The Equal Voting Provision*

■ Even if the plaintiffs were able to submit their proposal for a shareholder vote, their argument still fails because the equal voting provision does not apply to the merger as proposed. The provision thus never comes into play under the facts of this case. Again, this provision applies only when: (1) the Media General corporation itself, (2) seeks to acquire or to make an "acquisition of," (3) the stock or assets of another company, (4) in which an officer, director or 10% shareholder of Media General has "an interest, directly or indirectly." Specifically, the 10% shareholder must have an interest "in the company or assets to be acquired or in the consideration to be paid in the transaction." Charter, Art. II(B)(3)(a)(ii)(x).

Plaintiffs contend that their merger proposal is structured and designed to come within the terms of the equal voting provision. They argue that under their proposal, a newly-created subsidiary controlled by plaintiffs would be merged into Media General such that Media General would be the surviving entity of the merger and, therefore, the "acquiring" entity. Thus, they claim, Media General would "acquire" the stock or assets of another company—namely, the new subsidiary to be created and controlled by the Sugarman group.

Nonetheless, this provision is inapplicable for several reasons. First, under the merger proposal most recently outlined by the plaintiffs, the Media General corporation itself does *not acquire* "stock or assets of any company." Media General, Inc., would not be acquiring or purchasing the stock or assets of the new Sugarman-controlled subsidiary; indeed, in any realistic sense, the Sugarman group would be acquiring Media General. The only assets to be offered are the Sugarman group's cash, and this will not be "acquired" by Media General, Inc., but rather by the shareholders themselves in exchange for their shares.

As the defendants point out, under this version of a reverse triangular merger, no one can fairly say that Media General is acquiring anything in the transaction. Instead, "Media General shareholders acquire cash, Sugarman acquires Media General, and Media General acquires nothing." Defendants' Reply Brief, at 2.

Indeed, while there is a dispute about form, there appears to be no serious disagreement about the *substance* of the proposed transaction. Michael Tennenbaum, an investment banker retained by the plaintiffs, has explained that while Media General is "the nominal buyer," it is "in fact the seller." In his deposition, Mr. Tennenbaum went on to elaborate:

That is to say, that Media General, as a corporation, . . . would not be constituted, as it is today; its shareholders would receive cash, no longer own shares; and the board of directors would not be the same people, nor would the capitalization be the same, but rather *the entity that would be selling to them, in form, would, in substance, be buying.*

Tennenbaum Depos. at 80 (emphasis added); Defts' Reply Exh. 11.

Similarly, in a recent proxy statement issued by the Washington Post Company (cited by the plaintiffs), the Post says that proposals like Sugarman's seek:

to characterize an attempt to take control of a target corporation . . . *as an 'acquisition' by the company that is in fact being taken over.* This is done by structuring the takeover as a so-called 're-verse acquisition,' in which *the target corporation is acquired by another entity but remains as the surviving corporation after a merger* of the acquiring entity into the target corporation.

Plaintiffs' Exh. 28, at 14 (emphasis supplied). As plaintiffs appear to agree, this is a fair description of the substantive transaction they are proposing. And in determining which is the "acquired" and which the "acquiring" corporation, the economic reality and substance of the transaction should control. *See County of Marin v. United States*, 356 U.S. 412, 418, 78 S.Ct. 880, 883, 2 L.Ed.2d 879 (1958) (taking a realistic view of the term "acquisition" in context of a corporate transaction under the Interstate Commerce Act).

Thus, under the commonly understood meaning of the term "acquisition," this transaction involves not an acquisition *by* Media General, but rather an acquisition *of* Media General. As reverse triangular mergers are typically explained, Media General as the target is the acquired entity, while one of the plaintiffs will be the acquiring entity. *See* ABA Committee on Corporate Laws, *Final Changes in the Model Business Corporation Act*, 31 Bus. Lawyer 1747, 1752 (1976). In summary, while Media General would be the nominally surviving corporation, and its name

would remain on the resulting entity, it nonetheless is being *acquired by, and not acquiring, another corporation.* At the end of this transaction, because one or more of the plaintiffs will have purchased all of its corporate stock, Media General will be owned and controlled by the Sugarman group. Therefore, because Media General would in no real sense acquire the stock or assets of another company, the equal voting provision is not implicated by the plaintiffs' merger proposal. That provision simply does not apply where the Media General shareholders are forced to sell their shares for cash in a reverse merger.

The equal voting provision also fails to apply for a second reason. The plaintiffs have failed to show that any one entity of the Sugarman group is a "holder" of 10% or more of any class of Media General stock. Plaintiffs cannot prove that any single, individual plaintiff is such a 10% shareholder, only that the plaintiffs *as a group* hold over 10.1% of Class A stock. In fact, the Schedule 13D filed by plaintiffs on March 9, 1988 indicates that Giant Group and KCC together hold 2.9% of the Class A stock, while Barris Industries holds another 7.2%. Pltfs' Exh. 17 at 2–4, 11. The plain language of the provision contemplates that a single individual will be the holder, and there is no indication that a shareholders' group can qualify as such a "holder."

The Court is aware that this is merely a technical flaw in Sugarman's takeover attempt, and one which he can easily remedy by transferring ownership of all shares to one entity. Nevertheless, the provision clearly refers to a single holder of the corporation's stock, and there is no apparent reason why this requirement should not apply to the plaintiffs in this case. Therefore, for the additional reason that no single Media General insider is involved, the equal voting provision is not applicable to the plaintiffs' merger proposal.

Finally, this merger proposal is not the type of deal that the equal voting provision was designed or intended to safeguard against. Instead, as the defendants point

out, the provision was designed to restrict certain "sweetheart" deals involving corporate insiders of Media General, where an officer, director or 10% shareholder owns an interest in the company to be acquired by Media General. Such a takeover presents a great potential for abuse, since it could result in a substantial cash premium to the corporate insider, paid at Media General's corporate expense. Because this type of transaction reeks of self-dealing, approval by Class A voters is required in order to protect their interests.

Sugarman and his group are hardly corporate insiders, since they have no corporate voting power or control. Such control or voting power, gained from a position as an officer, director or controlling shareholder, is the core element in the traditional concept of a corporate "insider." Because none of the plaintiffs possesses this type of controlling position, they are not the type of corporate "insiders" whom this provision was designed to restrict; therefore, the provision was not intended to apply to their situation or proposal.

### 3. A Share Exchange

Plaintiffs' seventh cause of action fails for a separate and additional reason. Because their proposed merger involves a "share exchange" within the meaning of Va.Code § 13.1–718(F)(2), the plan triggers the statutory requirement of separate class voting. It is undisputed that under plaintiffs' proposal, the merger plan "exchanges shares for cash." Plaintiffs' Brief at 30–31. The shares that would be exchanged for cash are those held by the current Media General shareholders. *Id.*; Graham Aff. at ¶ 3; Dooley Aff. at ¶ 6; Tennenbaum Aff. at ¶ 2, Depos. at 79–81.

■ Any "cash-out" merger which by its terms forces all shareholders to exchange their shares for other corporate securities or for cash, effects or constitutes a "share exchange" within the meaning of Article 12 of the Virginia Stock Corporation Act. *See* Va.Code Ann. § 13.1–717(B)(3); Murphy, *supra,* 20 U.Rich.L.Rev. 67, at 121 (1985); Joint Bar Committee, *Commentary* at 63 (1984). Section 13.1–717(B) requires any

plan of share exchange to set forth its terms and conditions, including:

> 3. The manner and *basis of exchanging the shares to be acquired* for shares, obligations or other securities of the acquiring or any other corporation *or for cash* or other property in whole or part. . . .

Va.Code Ann. § 13.1–717(B)(3) (emphasis supplied). The statute obviously contemplates that share exchanges may consist of pure share-for-cash deals, such as those used in "cash-out" mergers. Thus, in proposing such a forced share exchange, the merger plan triggers the separate class voting requirement of § 13.1–718(F)(2), which provides that:

> F. Voting by a class or series of shares as a separate voting group is *required:*
>
> \* \* \* \* \* \*
>
> 2. On a plan of share exchange if the shares of such class or series are to be converted *or exchanged* under such plan . . . [emphasis added].

■ Therefore, given the terms of the plaintiffs' merger proposal, § 13.1–718(F)(2) requires the approval of both Class A and Class B shareholders, voting as separate voting groups. This statutory requirement of separate class voting is mandatory and may not be altered by inconsistent provisions in the articles of incorporation. Va.Const., Art. IX, § 6; *see Knights of Pythias v. Weller,* 93 Va. 605, 25 S.E. 891, 892–93 (1896) (corporation statute forms "an essential part" of every charter and controls in any case of inconsistency); *French v. Cumberland Bank & Trust Co.,* 194 Va. 475, 74 S.E.2d 265 (1953); *see also* Revised Model Business Corp. Act, § 10.04 (Official Comment). And Va.Code Ann. § 13.1–718(E) is not to the contrary.

Thus, even if the equal voting provision of Art. II(B)(3)(a) did apply to the plaintiffs' merger proposal, the statute would still require the additional approval of each class of shares voting as a separate group. As a result, two phases of voting approval would be required: (1) the combined vote of Class A and B shareholders, voting as a single group, by a simple majority; and (2)

the additional two-thirds vote of each class voting as a separate group. For this reason as well, the seventh cause of action incorrectly reads the law and fails to state a claim upon which relief may be granted. The defendants are therefore entitled to judgment on this claim as a matter of law.

## CONCLUSION

The Court's decision today is not a ruling on the merits of the plaintiffs' remaining claims, nor on the possible forms of relief or remedy to which plaintiffs may be entitled should they ultimately prevail on their remaining claims. Thus, plaintiffs may conceivably prove that they need not obtain board approval for their merger plan; or that they can force certain interested directors to abstain from voting on the merger; or that this defensive voting scheme as now constituted is invalid and void because it was adopted and is maintained in violation of the fiduciary duties owed to all shareholders, Class A and B alike. These are possible forms of remedy should plaintiffs prevail on their surviving fiduciary duty claims.

Defendants have also advanced a number of other arguments as to why the separate class voting is required in the shareholders' approval of the merger proposal. However, the Court need not and does not reach those other contentions, because it has today decided several issues that are dispositive of the seventh cause of action.

For all of the foregoing reasons, the defendants were granted summary judgment on the plaintiffs' seventh cause of action, by Order entered April 28, 1988.