MARYBELLE LOUISE O'BRIEN, PLAINTIFF-RESPONDENT, v. VIRGINIA-CAROLINA CHEMICAL CORPORATION, A CORPORATION, DEFENDANT-APPELLANT.

Argued November 30 and December 1, 1964—Decided February 1, 1965.

*Mr. Dickinson R. Debevoise* argued the cause for appellant (*Messrs. Riker, Danzig, Scherer & Brown,* attorneys).

*Mr. James F. X. O'Brien* argued the cause for respondent.

The opinion of the court was delivered by

FRANCIS, J. Defendant Virginia-Carolina Chemical Corporation is a corporation of the Commonwealth of Virginia with its principal place of business in the City of Richmond in that state. At all times relevant to this suit and the transaction involved, it was authorized to do business in New Jersey and had a registered agent located here. On September 28, 1962, following an affirmative vote of the required number of stockholders, defendant adopted a plan of recapitalization. Plaintiff, a resident of this State and a preferred stockholder who voted against the plan, instituted this action for a determination of her right to arrears of undeclared cumulative dividends which had accrued prior to January 1, 1957, and for a declaration that her right with respect to such dividends remains unaffected by the recapitalization. The trial court entered summary judgment in her favor holding that her right to the dividends remains valid and subsisting in spite of the favorable stockholder vote on the recapitalization plan and the formal order of approval of the amendment of defendant's certificate of incorporation by the Virginia State Corporation Commission under which defendant maintains the plan was authorized. Defendant's subsequent appeal to the Appellate Division was certified by us prior to argument there.

## I.

Defendant was incorporated in Virginia in 1926 to engage in the fertilizer and chemical business. On organization its capitalization was composed of 7% prior preference preferred stock, 6% cumulative participating preferred stock, and no par value common stock. The 7% preferred stock was retired fully by 1936. This was made possible, in part at least, by the curtailment of dividends on the 6% preferred stock. In any event, by January 1, 1957 the dividend arrearages on the latter stock amounted to $73.50 per share. They were $90 per share at the end of 1962.

Prior to January 1, 1957 plaintiff became the owner of 100 shares of the 6% preferred stock. The original corporate

charter provided that such "stock shall be redeemable, as a whole at any time or in part from time to time on any dividend payment date, at the option of the board of directors of the corporation, upon notice given as hereinafter provided, at $105 per share, plus an amount equal to all unpaid accumulated dividends thereon, at the rate of 6% per annum from July 1, 1927 to the redemption date, whether or not earned or declared; * * *." The provision was unchanged when plaintiff acquired her stock.

Section 154 of the Constitution of Virginia says, as it did in 1926, that corporate charters may be amended by general laws adopted by the General Assembly. When plaintiff became owner of her stock, section 3780 of the Virginia Code authorized charter amendments but declared that no amendment could require an exchange of preferred stock "for stock of another class or classes, without substantially the same preferences, except upon the consent of each of such preferred shareholders, * * *."

In 1956 Virginia revised its Stock Corporation Act to be effective on January 1, 1957. *L.* 1956, *c.* 428. Section 13.1–55 of the Virginia Code into which the revision was incorporated was changed to read:

"A corporation may amend its articles of incorporation, from time to time, in any and as many respects as may be desired, provided that the amendment may contain only such provisions as might be lawfully contained in original articles of incorporation at the time of making such amendment.

In particular, and without limitation upon such general power of amendment, a corporation may amend its articles of incorporation, from time to time so as:

\* \* \* \* \* \* \* \*

(k) To cancel or otherwise affect the right of the holders of the shares of any class to receive dividends which have accrued but have not been declared (whenever accrued and whether or not earned)."

Acting under this revision, on August 6, 1962 the Board of Directors of Virginia-Carolina decided to submit to the stockholders an amendment to its charter incorporating a plan of recapitalization. A meeting of the stockholders was called for

the purpose on September 28, 1962. The plan was adopted by a sufficient number of stockholders. Plaintiff protested its adoption and voted against it. On that day the amendment (incorporating the plan) was submitted to the State Corporation Commission of Virginia, which found that "the articles comply with the requirements of law and that all required fees have been paid." On the same day the Commission ordered that

"\* \* \* [t]his Certificate of Amendment be issued, and that this order, together with the articles, be admitted to record in the office of the Commission; and that the corporation have the authority conferred on it by law in accordance with the articles, subject to the conditions and restrictions imposed by law."

Apparently the proposed amendment was presented to the Commission immediately on the favorable vote of the stockholders, and approved by the Commission as a routine matter. No notice of the presentation or of hearing thereon was given to the stockholders. Plaintiff was unaware of any such proceeding and had no opportunity to be heard in opposition prior to the making of the order directing issuance of the certificate of amendment.

Plaintiff opposed and still opposes the portion of the recapitalization plan which deals with the conversion of her shares of 6% preferred stock. Under it each share of such stock together with its accumulated dividends was to be converted automatically into the following:

"(i) One (1) share of common stock of the corporation; plus
(ii) One and three-tenths (1.3) shares of the new 5%, $50 par Prior Preferred Stock of the Corporation; plus
(iii) One (1) share of the new 5%, $50 par, Convertible preferred stock of the corporation."

Miss O'Brien is willing, and has so indicated to defendant, to exchange her stock certificates for the new recapitalized ones but refuses to relinquish her right to the accumulated dividends. Defendant has issued in her name the certificates to which she would be entitled but declines to deliver them

to her unless she accepts them unqualifiedly in accordance with the recapitalization plan.

It may be noted that the new prior preferred stock is redeemable "as a whole at any time, or in part from time to time at the option of the Board of Directors of the Corporation upon notice given as hereinafter provided at a redemption price of $50.00 per share, plus an amount equal to all unpaid accumulated dividends thereon accrued to the redemption date whether or not earned or declared." The new convertible preferred stock was redeemable on the same basis at $60 per share until October 1, 1964, and thereafter at $55 per share. Each kind of stock also has a liquidation preference similar to the redemption value. Thus the redemption price or liquidation preference on the combined new preferred stock would be $120 ($125 before October 1964) in contrast to $105 for each old preferred share. In addition, on liquidation the holder of the new stock package as a common stockholder would be entitled to share in the assets of the company remaining after the required distribution to the preferred stockholders.

On November 12, 1962, shortly before institution of this suit, defendant declared a quarterly dividend of 62½ cents per share on both types of the new preferred stock to the stockholders of record on December 17, 1962. Plaintiff was advised she would not receive the dividends until she made an unqualified delivery to defendant of her old 6% preferred stock. During the pendency of this suit, on October 16, 1963, defendant redeemed the 5% prior preferred stock at $50 per share.

Two months and 23 days after approval of the recapitalization plan by defendant's stockholders and entry of the Corporation Commission's *ex parte* order approving the amendment of the certificate of incorporation, plaintiff instituted this action in the Superior Court, Chancery Division. Process was properly served on defendant's registered agent in New Jersey. The complaint described defendant's recapitalization plan, plaintiff's opposition to it and her vote against it. It alleged

that as of January 1, 1957 there were accumulated dividend arrearages on her stock of $73.50 per share, that plaintiff had a vested contractual right to such dividends under defendant's charter and the Virginia statute under which defendant was incorporated, and that the subsequent amendment to the Virginia Code, effective January 1, 1957 which purported to confer on corporations of the state the power by amendment of their charters to cancel or to divest stockholders of their right to receive accrued undeclared dividends, is unconstitutional under the United States and Virginia Constitutions in its attempted application to plaintiff's shares of stock. (No charge of illegality is made with respect to the effect of the recapitalization plan on dividends which accumulated after January 1, 1957.) The complaint sought a judgment declaring (1) that plaintiff's right to cumulative dividends on her stock in arrears prior to January 1, 1957 constituted a vested property right which right continues undiminished by the amendment of the Virginia statute and adoption by the required number of defendant's stockholders of the revision of its capital structure; (2) that she is entitled to receive current dividends on the new preferred stock held in her name by defendant, without surrendering her right to the dividend arrearages on her old stock; and (3) restraining defendant from continuing its refusal to recognize the validity of plaintiff's 6% preferred stock, or in the alternative, directing defendant to deliver the substitute shares of common and preferred stock due her under the recapitalization plan without requiring her to relinquish the dividends in arrears on her stock as of January 1, 1957. A further prayer for restraint against declaration or payment of any dividend on the new common stock until the arrears on plaintiff's stock were paid, was withdrawn before decision on the motion for summary judgment.

In its answer defendant alleged the plan of recapitalization was fair and equitable, in accordance with the valid statutes of Virginia and was adopted by the stockholders in accordance therewith. It alleged further that after stockholder approval

the plan was submitted to the State Corporation Commission which found that the amendment to the articles of defendant's incorporation complied with applicable law and ordered it approved. It was then asserted that the Commission has the authority of a court of record and if plaintiff desired to attack the order of approval, the attack had to be made by appeal to the Supreme Court of Appeals of Virginia; not having done so, plaintiff cannot question the legality of the order in the courts of New Jersey.

More specifically, defendant stated by way of defense on the merits that section 154 of the Virginia Constitution, as it existed at defendant's incorporation, reserved to the state the power to amend its corporation laws, which reservation was binding on its stockholders, including the plaintiff. It asserted also that the Virginia-Carolina Chemical Corporation charter reserved the right to amend, alter or change any of the provisions thereof in the manner then or thereafter provided by law, and that stockholders' rights were subject to the reservation. Therefore, it alleged that the act of January 1, 1957 authorizing amendment of the charter to "cancel or otherwise affect the right of the [plaintiff stockholder] to receive dividends which have accrued but have not been declared (whenever accrued and whether or not earned)" was valid and binding on plaintiff as well as all other stockholders.

Defendant moved for summary judgment on the pleadings, affidavits and exhibits. Among other things, the affidavits say that defendant has no facilities within the State of New Jersey and that it qualified to do business here only because it makes some shipments of materials into this State from its Baltimore, Maryland plant. Plaintiff made a cross-motion to strike all of the separate defenses set out in the answer, but did not seek a summary judgment at that time.

The trial court rejected defendant's apparently alternative contentions that it did not have jurisdiction to hear the matter because plaintiff's exclusive remedy was by way of appeal to the Supreme Court of Virginia from the order of the State Corporation Commission, or because under estab-

lished comity practice, courts of one state will not interfere with the internal affairs of a foreign corporation but will allow controversies affecting such matters to be decided in the courts of the state of corporate residence. The court acknowledged the substantive law of Virginia would control the basic meritorious issue. But it held that since plaintiff is a citizen and resident of New Jersey, and since her cause of action is transitory, the matter should be decided here in accordance with the law of Virginia.

On the merits, the trial court declared plaintiff's right to the accrued dividends on her stock is a vested contractual right protected by the Federal Constitution and, in the circumstances present, not subject to destruction "under the guise of exercise of the power reserved in the Virginia statute and defendant's charter at the time of incorporation." Plaintiff's contention that the 1957 revision of the Virginia Corporation Law, § 13.1–55, *supra*, was unconstitutional was not decided. Recognition was given to the principle that a statute, particularly one of a sister state, should not be declared unconstitutional if it can be construed reasonably as not offending the Constitution. The court felt that the pertinent subsection, 13.1–55(k), was reasonably susceptible of the construction that the Virginia legislature intended it to be applied prospectively and not retrospectively. See *Craddock-Terry Co. v. Powell*, 181 *Va.* 417, 25 *S. E. 2d* 363 (1943); "Industrial Finance Corp.," *State Corp. Comm'n Rep.* 148 (1926); Note, "The Stockholder and Vested Rights in Virginia," 42 *Va. L. Rev.* 107, 111–112 (1956). On such a construction it would affect only dividends accruing in the future and not those such as the plaintiff's, all of which had accrued prior to January 1, 1957. Accordingly, defendant's motion for summary judgment was denied, and plaintiff's counter motion to strike the separate defenses in the answer was granted.

On November 29, 1963, after argument of the motion and before the filing of the trial court's opinion on December 6, 1963, defendant merged with Socony Mobil Oil Company,

Inc., a New-York corporation. Under the merger each share
of the 5% convertible preferred stock of Virginia-Carolina
was converted into 1.32 shares of the common stock of Socony,
and each share of Virginia-Carolina common stock was con-
verted into 1.2 shares of the common stock of Socony. (As
appears above, the 5% prior preferred stock of Virginia-
Carolina had been redeemed at $50 per share about six weeks
before this merger.) The record shows that as the result of
defendant's recapitalization and the subsequent merger with
Socony, each share of original 6% preferred stock of Virginia-
Carolina (which plaintiff holds) received 2.52 shares of the
common stock of Socony, plus $65 representing the redemp-
tion price of 1.3 shares of the 5% prior preferred stock of
Virginia-Carolina. According to an uncontroverted affidavit
of the Treasurer of Socony, at the close of business on Decem-
ber 26, 1963, the market value of each share of Socony com-
mon stock was $71. Thus the holders of the original 6% pre-
ferred stock of Virginia-Carolina received in exchange for
each such share and its accrued dividends a package worth
$243.93 as of December 26, 1963. If plaintiff's 6% preferred
stock were to be redeemed as of that date in accordance with
defendant's charter prior to recapitalization, she would have
received only $204 per share, representing the par value of
$100 plus the redemption premium of $5 and accrued divi-
dends of $99.

After the adverse decision on the motion for summary
judgment and before the order thereon was signed, defendant
moved to note the merger with Socony Mobil Oil Company,
Inc. on the record, and for a rehearing. At the argument of
this motion defendant elaborated on its objection to the
court's jurisdiction. In particular it pointed out that under
section 12–63 of the Virginia Corporation Law, plaintiff, as
an aggrieved person, had a right of appeal to the Supreme
Court of Appeals from the September 28, 1962 order of the
Corporation Commission "admitting to record" the certificate
of amendment of defendant's charter, and reciting further
that defendant "have the authority conferred on it by law in

accordance with the articles [of amendment], subject to the conditions and restrictions imposed by law." And noting that the section requires the appeal to be taken within four months from the date of the order, defendant urged plaintiff's failure to appeal bars the attack on it in this action. In short, defendant contended the Commission's order had become a final judgment and entitled to full faith and credit in this State under the Federal Constitution.

Attention was called also to section 13.1–125 of the Virginia Corporation Law which says that

"* * * [n]o court within or without Virginia (except the Supreme Court of Appeals by way of appeal as authorized by law) shall have jurisdiction to review, reverse, correct or annul any action of the Commission, within the scope of its authority, with regard to any articles, certificate, order, objection or petition * * *."

(This provision, adopted by *L*. 1956, *c*. 428, might be compared with the less limited section 156(d) of the Virginia Constitution; and, see *Tennessee Coal, I. & R. Co. v. George*, 233 *U. S.* 358, 34 *S. Ct.* 587, 58 *L. Ed.* 997 (1914); *Restatement, Conflict of Laws*, § 617, *p*. 735 (1934).)

The trial court denied the motion for rehearing. With respect to the alleged finality of the order of the Virginia Corporation Commission and the claim it was binding on the New Jersey courts under the full faith and credit clause of the Federal Constitution, it said, among other things, plaintiff was not a party to the *ex parte* proceeding before the Commission and the issues raised in the present case were not raised by anyone nor considered by the Commission.

We note in passing that the Corporation Commission has administrative, legislative and judicial functions, and that it has established rules of practice and procedure regulating the manner of exercise of the functions. Section 12.49. Rule 7 prescribes the manner of styling (a) cases instituted on the Commission's own motion, (b) cases instituted by others against a defendant, and (c) *ex parte* petitions and applications. The order under discussion in this case clearly does not

reveal a case under (a) or (b); its tenor more closely resembles what it appears to have been, a (c) case, *i. e.*, an *ex parte* application. Under the heading "Judicial and Legislative Functions," Rule 6 says the Commission will hold public hearings throughout the year; all cases will be set for a day certain and "the parties notified." Rule 15 says:

"The doctrine of res adjudicata applies to final judgments, orders and decrees entered by the Commission sitting as a court of record."

Section 13.1–59 of the Virginia Corporation Law establishes the procedure for issuance of a certificate of amendment of the articles of incorporation. It simply calls for delivery of the certificate of amendment to the Commission after approval by the stockholders. There is no requirement for notice to stockholders or for hearing of objections thereto. (No one suggests plaintiff was a party or was given notice of a hearing.) An informal, *ex parte* proceeding seems to be contemplated. If the required fees are paid and the face of the papers shows compliance with the procedural conditions for amending the charter, the certificate of amendment apparently issues as of course.

For reasons presently to be stated, we shall not express an opinion at this time as to whether the Corporation Commission order holds the status of a judgment which is *res adjudicata* as to plaintiff and to which the courts of this State must give full faith and credit under the Federal Constitution. *Cf. Pittston Co. v. O'Hara,* 191 *Va.* 886, 63 *S. E. 2d* 34 (*Sup. Ct. App.* 1951), appeal dismissed *Winn v. Pittston Co.,* 342 *U. S.* 803, 72 *S. Ct.* 38, 96 *L. Ed.* 608 (1951); *O'Hara v. Pittston Co.,* 186 *Va.* 325, 42 *S. E. 2d* 269, 174 *A. L. R.* 945 (1947).

Subsequent to the denial of rehearing, defendant moved for leave to amend its answer to add six additional separate defenses relating to the damage phase of the case. The sum of these proposed defenses was that plaintiff cannot have the benefits of the plan of recapitalization and the benefits of her

original stock contract as well. More specifically, defendant wished to plead, among other things, that plaintiff must elect whether to accept the substituted new securities resulting from the recapitalization (and the merger) or the redemption value of her 6% preferred stock in the Virginia-Carolina Corporation on September 28, 1962, the date of the Commission's order approving the amended charter. Patently this application to amend was based on the affidavit of the Treasurer of Socony Mobil Oil Company, referred to above, which indicated the value of plaintiff's stock if converted according to the plan of recapitalization and the later Socony merger was greater (as of December 26, 1963) than its redemption value under defendant's original, unamended certificate of incorporation. (The upward trend of the Socony common stock has continued and is significantly higher as of the completion of this opinion. See quotations, *New York Times*, January 26, 1965.)

The trial court denied leave to amend. In his oral opinion he stated defendant's position to be that under the court's opinion declining to give defendant summary judgment, plaintiff was entitled to the redemption value of her stock plus the accrued dividends as of the amendment of the certificate of incorporation, plus interest from that date, or the stock to which she succeeded under the plan of recapitalization. But he held that since defendant had chosen to recapitalize rather than to redeem the 6% preferred stock, it became bound by the choice. Therefore, in view of his earlier ruling that plaintiff had a vested right in the accrued dividends on her stock which remained unaffected by the recapitalization, he declared (and entered summary judgment accordingly) she was entitled to the accrued dividends on her stock, and in addition, on delivery of that stock to defendant, she should receive the proper number of shares of common, convertible preferred and preferred stock authorized by defendant's recapitalization with all dividends declared on such stock and 6% interest from the date the dividends were payable until date of payment to her. The judgment directed further that

in the case of the new prior preferred stock which had been called by defendant, plaintiff should receive the sum of money representing her shares of such stock and accrued dividends thereon plus interest at 6% from the date the call money was payable to holders of such stock to the date of payment to plaintiff. It provided also that plaintiff was to be considered the owner of any Socony Mobil Oil Company stock which by the merger agreement was to be substituted or exchanged for the unredeemed shares of new stock to which plaintiff would be entitled under defendant's recapitalization plan. In addition, she was to receive any dividends on such stock declared or to be declared with interest at 6% from the date the dividends were payable until day of payment to plaintiff.

Defendant argues persuasively in this Court that plaintiff's stock contract represents reciprocal rights and obligations, and that if she wishes to enforce her rights under it, she must accept its obligations as well. So, defendant says it should have been allowed to amend its answer because, even assuming plaintiff has a vested right to the accrued dividends on her stock, she should be called upon to elect whether to stand on her original stock contract and so to receive, upon call, the redemption value plus the accrued dividends, or to receive the cash, interest and stock to which she is entitled under the recapitalization plan and the defendant's merger with Socony. Undoubtedly by reason of the merger, Socony succeeded to the rights and liabilities of defendant's original stock contract with plaintiff. *R. S.* 14:12–5; *State v. Union Bag-Camp Paper Co.*, 35 *N. J.* 390, 396 (1961); *Adams v. United States Distributing Corporation*, 184 *Va.* 134, 34 *S. E.* 2d 244 (*Sup. Ct. App.* 1945), *cert.* denied 327 *U. S.* 788, 66 *S. Ct.* 807, 90 *L. Ed.* 1014 (1946). In view of our disposition of the appeal it is not necessary to rule upon the trial court's refusal to allow the amendment, and the issue is reserved.

## II.

The above discussion brings us to the question of jurisdiction. We shall not discuss whether the courts of New

Jersey have jurisdiction over the subject matter in controversy, *i. e.*, in terms of power to hear and decide the case on its merits. We are satisfied that such power exists. The important juridical problem to be decided, as we see it, is whether our Superior Court should have entertained the suit. The answer presents a problem of comity involving in large measure the same type of considerations as control application of the doctrine of *forum non conveniens*. *Fletcher, Cyclopedia of Corporations*, § 8425, *p.* 419 (*rev. ed.* 1960).

There is no doubt that since defendant is a Virginia corporation, validity of the recapitalization plan depends upon application of the law of that state. Ordinarily the courts of one state are reluctant to interfere in controversies involving the internal affairs or management of a corporation of a sister state or in controversies between such a corporation and its stockholders. The basic question, however, is not one of power to exercise jurisdiction but of the wisdom of doing so. In most situations it is desirable to leave such matters to the courts of the state of creation of the corporation. New Jersey recognizes that principle as one of interstate amenity and her courts have given voice to certain factors which will influence their discretion in reaching a decision to reject or to retain such actions as are of a transitory nature and involve the interests of her own citizens. The factors are: (a) whether the right sought to be enforced or protected is clear; (b) whether the judgment can be enforced; (c) whether enough parties are before the court to enable it to dispose of the entire controversy; (d) whether it would be more convenient for the parties to dispose of the case in the foreign jurisdiction; (e) whether the corporation has stockholders resident in states other than New Jersey and the state of corporate domicile, thus giving rise to the possibility of disparate judicial determinations in a number of states; and (f) whether the controlling law of the corporate domicile state is doubtful or uncertain or the particular statute at the core of the controversy has not been definitively construed or its validity adjudicated in the home state. *Mayer v. Oxidation*

*Products Co., Inc.*, 110 *N. J. Eq.* 141, 156 (*Ch.* 1932); *Appleton v. Worne Plastics Corp.*, 140 *N. J. Eq.* 324, 329–332 (*Ch.* 1947); *Katcher v. Ohsman*, 26 *N. J. Super.* 28, 38 (*Ch. Div.* 1953); and, see Annotation, 72 *A. L. R. 2d* 1211, 1216–1220 (1960); *Fletcher, supra,* § 8426.

█ The parties appear to be in agreement that the courts of Virginia have not decided the precise issue presented here. They have found no case, and our research has disclosed none, which passed upon the right of a Virginia corporation by virtue of *L.* 1956, *c.* 428 under the conditions existing here to force a dissenting but outvoted preferred stockholder to accept a plan of recapitalization which substitutes new types of stock for existing preferred stock and accrued dividends thereon. The alleged unconstitutionality of the statute or its lack of legal competence to confer corporate power in such a context has not been decided; nor has any adjudication been made as to whether, as the court below held, the statute should be regarded as operating prospectively with respect to accrued but undeclared dividends on preferred stock. Moreover, assuming *L.* 1956, *c.* 428 cannot affect vested rights of preferred stockholders to accrued but undeclared dividends in the manner prescribed by the recapitalization plan, the parties are not in agreement as to plaintiff's remedy under Virginia law. Is there a right of appraisal? If so, is the test fair value of her stock on September 28, 1962, the effective date of the recapitalization plan? Is it redemption or "contractual" value as of that day? *Cf. Craddock-Terry Co. v. Powell, supra; Adams v. United States Distributing Corporation, supra;* Lattin, "Minority and Dissenting Shareholders' Rights in Fundamental Changes," 23 *Law & Contemp. Prob.* 307 (1958). Such matters also depend upon application of the Virginia law. *Weiss v. Atkins,* 52 *F. Supp.* 418 (*S. D. N. Y.* 1943). In that connection it may be noted that the 1956 statute grants to dissenting stockholders in mergers or consolidations the right to demand payment of the fair value of their stock as of the day prior to the day on which the vote was taken approving the merger or consolidation (Virginia

Corporation Law, *supra*, § 13.1–75), and the same right to those who dissent from a sale or exchange of all or substantially all of the property or assets of the corporation (*id.*, at § 13.1–78). Unlike the corporation acts of some other states, no such remedy is provided for stockholders who dissent from a recapitalization plan. See 42 *Va. L. Rev.*, *supra*, at *p.* 529.

Support is to be found in the Virginia cases prior to the operative date of *L.* 1956, *c.* 428 for plaintiff's position that her rights to the accrued dividends ought to be considered vested. *Craddock-Terry Co. v. Powell, supra; Coombes v. Getz,* 285 *U. S.* 434, 52 *S. Ct.* 435, 76 *L. Ed.* 866 (1932); see note, 42 *Va. L. Rev.*, *supra;* Latty, "Fairness, The Focal Point in Preferred Stock Arrearage Elimination," 29 *Va. L. Rev.* 1 (1942). Since adoption the statute has been commented upon favorably (Gibson, "The Virginia Corporation Law of 1956," 42 *Va. L. Rev.* 445, 603 (1956)), and has been sharply criticized (Emerson, "Vital Weaknesses in the New Virginia Stock Corporation Law and The Model Act," 42 *Va. L. Rev.* 489, 529, 530–534 (1956)). But, so far as we have been able to determine, there has been no authoritative decision by the Virginia courts on the issue presented in this case, *i. e.,* whether the legislature can confer power on a corporation, which it did not have under its charter or under the statute existing at the time of incorporation, to force dissenting stockholders to accept a recapitalization plan depriving them of their contractual right to undeclared accrued dividends on their preferred stock, and substituting therefor different shares of stock.

In deference to the Commonwealth of Virginia, we feel the courts of New Jersey should withhold their hand on the issue in order to permit a relevant adjudication there. There are cogent reasons for considering that state as the more convenient forum. Unlike the New Jersey cases cited above wherein our jurisdiction was exercised, defendant corporation has had relatively little contact with New Jersey. Moreover, our judgment would not be binding on preferred stockholders of other states who are not parties in this proceeding. Uniformity of

judgment is desirable in such cases and that end is more likely to result from a decision in the home state. Also, Virginia courts are more familiar with the significance of pertinent existing decisions and the historical development of the corporation statute, and ought to be given first opportunity to express an opinion as to the validity and application of the 1956 act in the light of those decisions.

Advisability of a decision to yield to Virginia is indicated strongly by rulings in comparable situations. *Weiss v. Routh,* 149 *F. 2d* 193 (2 *Cir.* 1945); *Langfelder v. Universal Laboratories, Inc.,* 293 *N. Y.* 200, 56 *N. E. 2d* 550, 155 *A. L. R.* 1226 (*Ct. App.* 1944); *Novich v. Rojtman,* 5 *Misc. 2d* 1029, 161 *N. Y. S. 2d* 817 (*Sup. Cl. Spec. Term* 1957); *Miesse v. Seiberling Rubber Co.,* 264 *App. Div.* 373, 35 *N. Y. S. 2d* 504 (*App. Div.* 1942); *Fox v. Allied Stores Corp.,* 252 *App. Div.* 675, 300 *N. Y. S.* 1254 (*App. Div.* 1937); *Hogue v. American Steel Foundries,* 247 *Pa.* 12, 92 *A.* 1073 (*Sup. Ct.* 1915).

Under all the circumstances, we feel plaintiff should be remitted to Virginia for the resolution of her claim. Undoubtedly upon reinstitution of the action in that jurisdiction the question whether defendant is entitled to call plaintiff's stock for redemption will be raised again. That course seems inevitable since the redemption value is less than the present worth of the exchange stock plaintiff would receive under the recapitalization plan and defendant's merger with Socony. If, as defendant so forcefully argues, it has the right to call plaintiff's stock, and it does so before or upon the filing of the new suit in Virginia, from a practical and material standpoint the basic problem will become substantially moot. Plaintiff's choice then would be between receiving the redemption value of her present stock in cash, or the greater combined value produced by the recapitalization plan, *i. e.,* some cash representing the value of the 5% prior preferred stock (and appropriate interest thereon) issued under the plan and since called, plus the stock to which she would be entitled under the merger of defendant and Socony. As has been indicated we express no opinion on that aspect of the matter, pre-

ferring to leave it and all other problems relating to the essential merits of the controversy for resolution in Virginia. Accordingly, the judgment of the Chancery Division is reversed and the complaint dismissed. The dismissal is subject to the following conditions:

(1) Defendant agrees to waive the four months' limitation on plaintiff's right to appeal prescribed by § 12.63 of the Virginia Corporation Law, if such limitation is applicable to her cause of action, or any other time limitation on the institution of any suit which ordinarily would be open to her to review the Corporation Commission's order approving the amendment of defendant's certificate of incorporation, or to question the validity of defendant's recapitalization plan; and

(2) Providing also the appropriate Virginia court accepts jurisdiction of the suit instituted by plaintiff presenting the issue of validity as to her of the defendant's plan of recapitalization, and renders a decision on the merits thereof.

Defendant may have ten days from the date hereof to report to this Court in writing as to its intention regarding condition (1). With respect to (2), if for reasons peculiar to Virginia procedure, plaintiff is denied a decision on the merits of the controversy as it is now presented to New Jersey courts, an application may be made to this Court to vacate the order of dismissal and reinstate the appeal for plenary determination here. *Cf. Gore v. United States Steel Corporation,* 15 *N. J.* 301 (1954), *cert.* denied 348 *U. S.* 861, 75 *S. Ct.* 84, 99 *L. Ed.* 678 (1954); *Wendel v. Hoffman,* 259 *App. Div.* 732, 18 *N. Y. S. 2d* 96 (1940).

So ordered. No costs.

*For reversal* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.