# Richmond

## MARYBELLE LOUISE O'BRIEN v. SOCONY MOBIL OIL COMPANY, SUCCESSOR, ETC.

January 16, 1967.

Record No. 6293.

Present, Eggleston, C. J., and Buchanan, Snead, I'Anson, Carrico and Gordon, JJ.

*James F. X. O'Brien (Walter E. Rogers; Williams, Mullen & Christian, on brief), for the appellant.*

*John S. Battle, Jr. (A. E. Dick Howard; Gordon H. Rosser, Jr.; McGuire, Woods & Battle, on brief), for the appellee.*

GORDON, J., delivered the opinion of the court.

On September 28, 1962, the stockholders of Virginia-Carolina Chemical Corporation ("VC") approved an amendment to its certificate of incorporation, providing for the conversion of all outstanding shares of VC's 6% Cumulative Dividend Participating Preferred Stock (the "Old Preferred") into newly authorized shares of stock and the cancellation of all dividend arrearages on the Old Preferred. On the same day, VC filed articles of amendment with the State Corporation Commission, and the Commission entered an order issuing a certificate of amendment. The Commission issued the certificate pursuant to § 59 of the Virginia Stock Corporation Act, which became effective January 1, 1957.[1]

When the certificate of amendment was issued, Marybelle Louise O'Brien owned 100 shares of Old Preferred. On October 4, 1965, Miss O'Brien filed a notice of appeal from the Commission's order, and on the same day she filed a petition for appeal to this Court. In

---

(1) The Virginia Stock Corporation Act was enacted in 1956 (Va. Acts of Assembly 1956, ch. 428, at 487) and codified as Va. Code Ann. Title 13.1, chap. 1, §§ 13.1-1 *et seq.* The reference in the text to § 59 of the Act is to Code § 13.1-59. Future references to sections of the "Virginia Stock Corporation Act" or the "Act" will similarly omit the number of the Title (13.1).

the petition she contested the validity of the certificate of amendment issued by the Commission, insofar as it affected her right to undeclared dividends that had cumulated before January 1, 1957. By order entered November 23, 1965, we granted her an appeal of right from the Commission's order of September 28, 1962.

Both Miss O'Brien and VC[2] filed briefs in this Court on the merits of the case. In these briefs they asked us to decide the case on the merits, even though the notice of appeal and petition for appeal had not been filed within the time specified by our Rules and the applicable Virginia statutes.

Our Rule 5:1 § 13 provides that no appeal shall be allowed from an order of the Commission unless the appellant files a notice of appeal with the clerk of the Commission "within sixty days after final order or judgment". That Rule also requires the clerk to file the certified transcript with the clerk of this Court "within the time allowed by the statute", and requires the appellant to file a petition for appeal with the clerk of this Court "within like time". Code § 12-63 provides that an appeal from an order of the Commission "shall be taken and perfected within four months from the date of such . . . order . . ." Va. Code Ann. § 12-63 (Repl. vol. 1964); see also Va. Code Ann. § 8-463 (Repl. vol. 1957) and Va. Code Ann. § 8-489 (Supp. 1966). These requirements are mandatory or jurisdictional. See *Condrey* v. *Childress*, 203 Va. 755, 127 S.E.2d 150 (1962); *Andrews, Executrix* v. *Cahoon*, 196 Va. 790, 86 S.E.2d 173 (1955); *Skeens* v. *Commonwealth*, 192 Va. 200, 64 S.E.2d 764 (1951). Accordingly, before oral argument of the case we requested supplemental briefs dealing with our jurisdiction to entertain the appeal. The question now before us is whether we must dismiss the appeal because the appellant failed to comply with the time requirements of the Rules and statutes.

Before discussing reasons advanced by counsel why this Court has jurisdiction to entertain this late appeal, we will outline the nature of the controversy and the steps taken before the controversy reached us.

The record shows that Miss O'Brien acquired her 100 shares of Old Preferred before January 1, 1957. (The precise date of ac-

---

(2) On November 29, 1963, VC (a Virginia corporation) merged into Socony Mobil Oil Company, Inc. (a New York corporation), which later changed its name to Mobil Oil Corporation. References in this opinion to VC after that date should be taken as references to Socony Mobil Oil Company, Inc. or Mobil Oil Corporation as successor to VC.

quisition is not disclosed.) These shares were issued pursuant to VC's original certificate of incorporation, which became effective upon its organization in 1926. The pertinent provisions of the certificate of incorporation are copied in the footnote.[3]

In 1956, the General Assembly of Virginia enacted the Virginia Stock Corporation Act, which was patterned on the Model Business Corporation Act of the American Bar Association.[4] (See Report by the Code Commission of Virginia for Revision of the Laws Relating to Corporations, H.D. 5, Virginia General Assembly (1956).) The Act became effective January 1, 1957. On that day, the cumulated undeclared dividends on the Old Preferred totaled $73.50 per share,

---

(3)                            "FOURTH
"II

"6% Cumulative Dividend Participating Preferred Stock.

"1. The holders of the Preferred Stock shall be entitled . . . to receive, out of the surplus of the corporation . . . or out of the net earnings of the corporation, when and as declared by the board of directors of the corporation, dividends at the rate of . . . 6% per annum from the date of the issue of the Preferred Stock, payable quarterly on such dates as shall be determined by the board of directors of the corporation, in priority to any dividends on the Common Stock of the corporation . . . From and after July 1, 1927, such dividends at the rate of 6% per annum on the Preferred Stock shall be cumulative. No dividend shall be paid or set apart for payment on the Common Stock of the corporation in any fiscal year, after July 1, 1927, unless and until all such accumulated dividends on the Preferred Stock for all previous fiscal years subsequent to July 1, 1927, shall have been paid or set apart for payment in full, but without interest, nor unless and until full dividends on the Preferred Stock for the current and all preceding dividend periods of the current fiscal year either shall have been paid or set apart for payment . . ."

* * *

"EIGHTH

"The following provisions are inserted for the regulation of the business and for the conduct of the affairs of the corporation and for further creating, defining, limiting and regulating the powers of the corporation, its directors and its stockholders:

"11. The corporation reserves the right to amend, alter, change or repeal any provisions contained in this certificate in the manner now or hereafter prescribed by law, subject to the provisions of paragraph 6 of sub-division I and paragraph 5 of sub-division II of Article Fourth hereof, and all rights conferred on stockholders hereunder are granted subject to this provision." [Paragraph 6 of sub-division I of Article Fourth related to the 7% Prior Preference Stock, which was fully retired in 1936. Paragraph 5 of sub-division II of Article Fourth provided in substance that, without the consent of at least two-thirds of the Old Preferred, the corporation would not (a) increase the authorized amount of the 7% Prior Preference Stock, (b) increase the authorized amount of the Old Preferred, or create any stock on a parity with the Old Preferred or any stock (other than the 7% Prior Preference Stock) having priority over the Old Preferred or alter or change the preferences of the Old Preferred, or (c) create liens on the corporation's property or assets, except for certain described liens.]

(4) See footnote (1).

the arrearages having accumulated principally in the depression years of the 1930's.

Before the effective date of the Virginia Stock Corporation Act, Virginia law did not authorize VC to cancel a stockholder's cumulated undeclared preferred dividends, without the stockholder's consent.[5] However, § 55 of the Virginia Stock Corporation Act provided:

"§ 13.1-55. *Right to amend articles of incorporation.*—A corporation may amend its articles of incorporation, from time to time, in any and as many respects as may be desired, provided that the amendment may contain only such provisions as might be lawfully contained in original articles of incorporation at the time of making such amendment.

"In particular, and without limitation upon such general power of amendment, a corporation may amend its articles of incorporation, from time to time, so as:

\* \* \*

"(k) To cancel or otherwise affect the right of the holders of the shares of any class to receive dividends which have accrued but have not been declared (whenever accrued and whether or not earned)." [6]

On August 6, 1962 VC's board of directors approved a plan of recapitalization, to be effected by amending the certificate of incorporation. The proposed amendment called for the creation of two classes of new preferred stock, 5% Prior Preferred Stock and 5% Convertible Preferred Stock. It provided that when the amendment became effective, "each outstanding share of the presently authorized 6% Cumulative Dividend Participating Preferred Stock of the Corporation . . . [the Old Preferred] with all dividend *arrearages thereon*, shall be automatically changed and converted into the following: (i) One (1) share of Common Stock of the Corporation; plus (ii) One and three-

(5) Before 1938 Virginia law did not provide for the elimination of accrued undeclared dividends by charter amendment in any case without the consent of each stockholder affected thereby. Beginning in 1938 and until January 1, 1957, Virginia law permitted a corporation to eliminate accrued undeclared dividends, by the favorable vote of 90% of each class of stockholders affected thereby, only if such dividends had not been earned or had not been declared because of capital deficit. Va. Acts of Assembly 1938, ch. 309, at 444. Counsel apparently concede these conditions were not met in the case of the cumulated dividends on the Old Preferred.

(6) A two-thirds stockholders' vote is required, as more fully set forth in footnote (7).

tenths (1.3) shares of the new 5% Prior Preferred Stock of the Corporation; plus (iii) One (1) share of the new 5% Convertible Preferred Stock of the Corporation". [Emphasis supplied]

At the annual stockholders' meeting on September 28, 1962, the proposed amendment was approved by the favorable vote of more than two-thirds of the total outstanding shares of stock and more than two-thirds of the outstanding shares of each class of stock of VC, including the Old Preferred.[7] (72.1% of the shares of the Old Preferred were voted for the amendment.) As already stated, the State Corporation Commission issued a certificate of amendment on September 28, 1962.

Miss O'Brien received due notice of the stockholders' meeting, with a proxy statement and a copy of the proposed articles of amendment. She appeared at the meeting by proxy, objected to the plan of recapitalization and charter amendment, and cast a negative vote. Miss O'Brien recognized VC's right to recapitalize under the Virginia Stock Corporation Act, effective January 1, 1957, including the right under § 55(k) to eliminate dividends accruing after the effective date of the Act; "but [she] refused to recognize that portion of the plan which called for the surrender of any rights to cumulated but undeclared dividends accruing prior to January 1, 1957". So Miss O'Brien accepted the provisions of the recapitalization plan that entitled her to receive shares of Common Stock, new 5% Prior Preferred Stock and new 5% Convertible Preferred Stock; but she repudiated the provisions of the plan that cancelled pre-1957 cumulations on the Old Preferred.

On December 21, 1962 Miss O'Brien filed a civil action against VC in the Superior Court of New Jersey, Chancery Division, Essex County. That Court held that Miss O'Brien's right to "unpaid, cumulative dividends accrued to January 1, 1957 in the amount of $73.50

(7) § 56 of the Virginia Stock Corporation Act requires, for adoption of an amendment, the affirmative vote of the holders of more than two-thirds of the shares entitled to vote on the amendment or, if any class or series of shares is entitled to vote as a class, the affirmative vote of the holders of more than two-thirds of the shares of each class or series entitled to vote thereon and of the total shares entitled to vote thereon. § 57 of the Act prescribes that the holders of shares of any class shall be entitled to vote as a class, whether or not the articles of incorporation so provide, if (among other matters) the amendment would effect a reclassification of the shares of such class.

Section 56 provides further: "The articles of incorporation may require a greater vote than herein prescribed, either for all amendments or for particular amendments, and any such requirement can itself be changed only by the vote so prescribed". VC's certificate of incorporation required no greater vote for any amendment.

per share on her shares of 6% Preferred Stock [the Old Preferred] . . . continue[s] to constitute a valid and subsisting property right owned by her and protected against confiscation or diminution by . . . [VC] until paid to her according to law . . ."

On appeal, the Appellate Division certified the case to the Supreme Court of New Jersey. The Supreme Court reversed the judgment of the Superior Court and dismissed Miss O'Brien's complaint, subject to conditions. *O'Brien* v. *Virginia-Carolina Chem. Corp.*, 44 N.J. 25, 206 A.2d 878 (1965). The conditions were that VC waive any time limitation on the institution of proceedings in Virginia to review the State Corporation Commission's action in approving the amendment to VC's certificate of incorporation or to question the validity of the recapitalization plan, and that the appropriate Virginia court accept jurisdiction and render a decision on the merits. The Supreme Court of New Jersey dismissed the complaint as a matter of comity. "In deference to the Commonwealth of Virginia, we feel the courts of New Jersey should withhold their hand on the issue in order to permit a relevant adjudication there." *Id.* at 41, 206 A.2d at 887.

VC executed a waiver as suggested by the Supreme Court of New Jersey and, as already mentioned, both it and Miss O'Brien have urged us to decide the issue on the merits. Counsel advance several grounds to support our jurisdiction.

Counsel for Miss O'Brien point out that § 156(d) of the Constitution and the statutes of Virginia permit an aggrieved person to appeal to this Court from an order of the State Corporation Commission, even though the aggrieved person was not a party to the proceeding before the Commission, citing *Jones* v. *Rhea*, 130 Va. 345, 107 S.E. 814 (1921). They point further to the fact that Miss O'Brien did not enter an appearance in the Commission before it entered the September 28, 1962 order issuing the certificate of amendment. They contend that because Miss O'Brien was entitled to appeal from the Commission's order and was not a party to the proceedings before the Commission, the time limitations respecting prosecution of the appeal are not applicable to her.

Miss O'Brien had actual notice, however, that an amendment to the certificate of incorporation would be considered and voted on by the stockholders at the September 28, 1962 meeting. VC mailed the notice to her on August 24, 1962, and the notice was accompanied by a proxy statement and the full text of the proposed amendment. Moreover, § 59 of the Virginia Stock Corporation Act put her on

notice that the Commission would issue a certificate of amendment upon presentation of articles of amendment evidencing compliance "with the requirements of law."

Before the certificate of amendment was issued, Miss O'Brien could have requested the Commission to hold a hearing, as provided for under the Commission's Rules of Practice and Procedure, to consider her contention that the articles of amendment did not comply with the requirements of law. She did not ask for a hearing. In any event, the time limitations prescribed by our Rules and Code §§ 8-463, 8-489 and 12-63 are applicable to appeals from all orders of the Commission, including orders issuing certificates of amendment.[8]

It was suggested at oral argument that the State Corporation Commission has jurisdiction to enter a declaratory judgment deciding the merits of this case. See *Bridge Corp.* v. *City of Richmond*, 203 Va. 212, 123 S.E.2d 636 (1962). Perhaps, despite the passage of time since entry of the Commission's order issuing the certificate of amendment, the Commission has jurisdiction to enter a declaratory judgment to resolve an actual controversy whether its order is void for constitutional reasons. But that issue is not properly before us. We will not decide on appeal whether the Commission should have entered a declaratory judgment, where (as here) neither party requested the Commission to enter a declaratory judgment and the Commission did not enter a declaratory judgment.[9] *Jones Transfer Co.* v. *Commonwealth*, 174 Va. 184, 5 S.E.2d 628 (1939). Furthermore, as pointed out in *Jones Transfer Co.*, we have no original jurisdiction to enter a declaratory judgment.

Counsel for VC argue that we can waive the time limitations for appeal in this case, as we did in three habeas corpus cases: *Cabaniss* v. *Cunningham*, 206 Va. 330, 143 S.E.2d 911 (1965); *Thacker* v. *Peyton*, 206 Va. 771, 146 S.E.2d 176 (1966); and *Stokes*

(8) A stockholder's right to appeal from an order of the Commission issuing a certificate of amendment was recognized in *French* v. *Cumberland Bank and Trust Co.*, 194 Va. 475, 74 S.E.2d 265 (1953).

(9) At oral argument, counsel asked us to treat this appeal as an appeal from a decision set forth in an opinion rendered by the State Corporation Commission on October 21, 1965. The Commission's opinion was prompted by Miss O'Brien's request that it certify the record for appeal to this Court, despite the lapse of time since entry of the Commission's order of September 28, 1962. In the course of the opinion, the Commission made certain declarations respecting the effect and validity of § 55 of the Virginia Stock Corporation Act. But those declarations cannot be deemed to amount to a "decision", from which an appeal can be prosecuted under Va. Code Ann. § 12-63.1 (Repl. vol. 1964). The only decision announced by the Commission's opinion was the decision to certify the record. Neither party challenges that decision.

v. *Peyton*, 207 Va. 1, 147 S.E.2d 773 (1966). In each of those cases, we directed that a convicted felon be permitted to appeal to this Court, though the time for perfecting the appeal had expired, or that he be retried or released from custody. These alternatives were dictated by mandates of the Supreme Court of the United States, accompanying its holdings in several cases that persons convicted of felonies had been denied their constitutional right to appeal. E.g. *Lane* v. *Brown*, 372 U.S. 477, 481, 9 L.ed.2d 892, 82 S.Ct. 768 (1963).

We permitted late appeals in the *Cabaniss, Thacker* and *Stokes* cases because of overriding constitutional requirements that operated to suspend the time requirements for appeal to this Court. This permission was based upon our holdings that Cabaniss, Thacker and Stokes had been denied their constitutional rights. For reasons to be set forth, we hold that Miss O'Brien has been denied no constitutional right. The question whether the precedent of the *Cabaniss, Thacker* and *Stokes* cases should be followed in cases involving denial of constitutional property rights can therefore be deferred, and should be deferred, for decision when that issue is presented.

The New Jersey Superior Court interpreted § 55(k) of the Virginia Stock Corporation Act as referring only to dividends that might accrue after January 1, 1957, the effective date of the Act. We do not agree. Section 55(k) authorizes the cancellation of accrued but undeclared dividends "whenever accrued and whether or not earned". This language, not found in the Model Act, was intended to make it doubly certain that pre-1957 cumulations could be cancelled. Nor do we agree with the Superior Court's conclusion that our interpretation renders § 55(k) unconstitutional.

When Miss O'Brien acquired her shares of Old Preferred she joined with the other owners of equity interests in the corporation. As a stockholder she acquired certain rights and privileges spelled out in VC's certificate of incorporation. These rights and privileges were subject to change, however, by the requisite vote of her fellow stockholders as prescribed by the Virginia corporation laws in effect when she acquired the stock *or* in effect at any time thereafter. Miss O'Brien's "contract" with VC so provided. Under paragraph 11, Article Eight, of the certificate of incorporation, VC reserved the right to "amend, alter, change or repeal" any provision contained in the certificate "in the manner now or hereafter prescribed by law". See footnote (3), *ante*.[10]

---

(10) As set forth in footnote (3), this reservation was made subject to the pro-

Furthermore, Miss O'Brien's rights and privileges were subject to change pursuant to the provisions of the Virginia Stock Corporation Act because of the power reserved by the State under § 158 of the Constitution of Virginia to alter or amend a corporate charter by the enactment of new corporation laws. *French* v. *Cumberland Bank and Trust Co.*, 194 Va. 475, 74 S.E.2d 265 (1953).

■ Counsel for Miss O'Brien concede the power reserved by the State to enact legislation that permits change of stockholder rights, except where the rights are vested property rights. They contend Miss O'Brien has a vested property right to undeclared dividends that accrued before January 1, 1957. She has a vested property right, they argue, because Virginia law before January 1, 1957 did not permit VC to eliminate the Old Preferred stockholders' rights respecting these dividends without her consent. They conclude that § 55 of the Virginia Stock Corporation Act, as we have interpreted it, unconstitutionally deprives Miss O'Brien of this vested property right.[11]

visions of paragraph 6, sub-division I, and paragraph 5, sub-division II, of Article Fourth. However, paragraph 6 was no longer applicable when the 1962 charter amendment was adopted, and paragraph 5 was complied with when the 1962 charter amendment was adopted because more than two-thirds of the Old Preferred voted in favor of the amendment as required by paragraph 5.

(11) The "vested right" theory is discussed in the revisors' Comment on § 56 of the proposed Act, which reads:

"The two-thirds rule of this section is the most important provision of the Act. It will restore the original design of the Virginia law (Acts 1902-3-4, ch. 270, p. 437, ch. I § 7, ch. III § 5c) and at the same time make it identical with the Model Act. This repeals the 90% requirement of § 13-90 which has proved unworkable, unnecessary and outmoded. It resulted from a theory, popular in the 1920's, that certain rights, which no one could define, were 'vested' and immune from change except on unanimous consent. This theory has been found unnecessary as a matter of constitutional law and impossible as a matter of corporate business. It has thus been abandoned: 'Almost any amendment may be authorized by statute to be made with reference to the share contract, common or preferred, if the statute covers it clearly. The doctrine of vested rights protecting certain portions of the share contract has been found illusory.' (Ballantine on Corporations, rev. ed., 1946, p.649). To the same effect see *French* v. *Cumberland Bank and Trust Co.*, 194 Va. 475, 482 (1953).

"While establishing the two-thirds rule, the bill assures fourfold protection to stockholders:

"1. In case of important changes . . . [enumerated in § 57], a two-thirds vote is required separately by each affected class even if expressly deprived of any voting power by the charter.

"2. If the parties desire any greater voting requirement and put it in the charter, what they say controls. [See the last paragraph of footnote (7), *ante.*]

"3. Special notice of the stockholder meeting must be given, not for the usual minimum of 10 days but for a special minimum of 25 days, and it must be ac-

The provisions of VC's certificate of incorporation relating to the Old Preferred refute, however, the theory that Miss O'Brien has a vested property right in any cumulated undeclared dividends.

Miss O'Brien was entitled to receive dividends on her shares of Old Preferred only out of the surplus or net earnings of the corporation and only "when and as declared by the board of directors of the corporation". (See footnote (3), *ante*.) Miss O'Brien's dividends did not "accrue" like interest on a debt. Undeclared dividends are not a corporate debt. They are an expectancy, ripening into debt only when legally declared.

The certificate of incorporation established a dividend priority in favor of the holders of Old Preferred, expressed as a negative covenant: "No dividend shall be paid or set apart for payment on the Common Stock of the corporation in any fiscal year, . . . unless and until all such accumulated dividends on the . . . [Old Preferred] for all previous fiscal years . . . [and the current fiscal year] shall have been paid or set apart for payment in full . . ." (See footnote (3), *ante*.) Until such time as this negative covenant had been changed by the requisite vote of stockholders under the current corporation laws of Virginia, Miss O'Brien could have enjoined the corporation from paying dividends on Common Stock in contravention of the covenant. At no time could she have enforced payment of undeclared preferred dividends.

Miss O'Brien had no property right in the accumulated earnings and surplus of the corporation. They never represented a fund dedicated for payment of undeclared dividends. Because Miss O'Brien had no right to demand payment of cumulated undeclared dividends and no claim to the funds out of which they might be paid, she necessarily had no vested property right in undeclared dividends that accrued before January 1, 1957.[12]

companied by a copy of the proposed change so as to afford full opportunity for its consideration (§ 13.1-26).

"4. Should any question of fraud arise, the courts are given jurisdiction before the Commission acts to determine it and grant all appropriate relief (§ 13.1-125).

"These provisions will put Virginia in line with the modern provisions of a majority of the States." Report by the Code Commission of Virginia for Revision of the Laws Relating to Corporations, *supra*, H.D. 5, Virginia General Assembly (1956). See Gibson, *How Fixed Are Class Shareholder Rights?*, 23 Law & Contemp. Prob. 283 (1958); Gibson, *The Virginia Stock Corporation Law of 1956*, 42 Va. L. Rev. 603 (1956).

(12) Counsel for Miss O'Brien cite *Johnson* v. *Johnson & Briggs, Inc.*, 138 Va. 487, 122 S.E. 100 (1924), and *Craddock-Terry Co.* v. *Powell*, 181 Va. 417, 25 S.E.2d 363 (1943), as supporting their position that rights respecting cumulated undeclared

In *French v. Cumberland Bank and Trust Co., supra*, 194 Va. 475, 74 S.E.2d 265 (1953), French contended that he had been unconstitutionally deprived of his vested right to elect a director of the bank. When French acquired his stock, the bank's charter provided for cumulative voting, and the applicable Virginia statute permitted change of voting rights only if 90% of the affected stockholders agreed to the change. Because French owned slightly more than 10% of the bank's preferred stock, he could control the election of at least one director by voting cumulatively, and he could preserve his right to vote cumulatively by withholding his consent to any change of voting rights. After French acquired his stock, the Virginia statute was amended so as to permit the bank to eliminate cumulative voting by a charter amendment approved by vote of two-thirds, instead of 90%, of the preferred stock. The bank then eliminated cumulative voting by a charter amendment adopted pursuant to the provisions of the amended statute. We rejected French's contention that he had been deprived of a vested right. We pointed out that because of the power reserved by the State, French "ac-

---

dividends on VC's Old Preferred are vested property rights.

Both of these cases, however, involved corporate liquidations. The Johnson & Briggs, Inc. charter provided, with respect to distributions to be made in the liquidation of the corporation, that holders of the preferred stock should receive the par amount of their shares "and the amount of dividends accumulated and unpaid thereon before any amounts shall be payable to the holders of common stock". We held that, in making distribution of the net assets of the corporation upon its dissolution, the corporation was obligated to make the preferential liquidating distributions specified in its charter, including an amount equal to accumulated and unpaid dividends, even though the earnings of the corporation did not equal the amount of such dividends. We pointed out that the rules applicable to the declaration of dividends by a going corporation differ from the rules applicable to the making of liquidating distributions on the dissolution of a corporation.

When Craddock-Terry Co. was liquidated, its charter provided that the preferred stockholders should be "preferred as to assets to the extent of the par value thereof, but no further, in the case of the liquidation of the company". Again, we held that the preferred stockholders were entitled to the preferential liquidating payments specified in the charter.

These cases did not involve the right of a corporation to change the provisions of its charter by stockholder action authorized under the corporation laws. Rather, they involved the right of a stockholder to enforce the existing share contract in accordance with its terms. The contracts provided that the preferred stockholders should receive preferential liquidating distributions, including (in the case of Johnson & Briggs, Inc.) an amount equal to cumulated unpaid dividends. Each corporation being in the process of liquidation, the share contract obligated the board of directors to cause the net assets (after payment of debts) to be first distributed in satisfaction of the preferential payments prescribed for preferred stockholders. Our holdings in the cases do not support Miss O'Brien's contention that she has a vested right in undeclared dividends of a going corporation.

quired and held his stock with full knowledge that the voting rights of his shares of stock for directors might be changed by general law, with or without his consent". *Id.* at 482, 74 S.E.2d at 269.

Counsel for Miss O'Brien would have us distinguish the *French* case because of the difference between voting rights and rights to cumulated undeclared dividends. We have no proper basis, however, for upholding the State's power to provide for the elimination of one right while denying its power to provide for the elimination of the other right. Neither right is a vested property right, and each is subject to change by proper corporate action under existing corporate law.

*Veix v. Sixth Ward Assn.*, 310 U.S. 32, 84 L.ed. 1061, 60 S.Ct. 792 (1940), supports our conclusion that Miss O'Brien was denied no constitutional right by the change of her stock contract. Veix bought prepaid shares in the Sixth Ward Building & Loan Association. After Veix acquired his shares, New Jersey enacted a statute that changed his original share contract by curtailing his right to make withdrawals. Veix sought to withdraw his funds pursuant to the provisions of his original contract, but payment was not made because of the change effected by the new statute. Veix then brought action against the Association, alleging that the change effected by the subsequent legislation contravened the impairment of contract and due process clauses of the Constitution of the United States. The Supreme Court held that the amendments to Veix's share contract effected by the statute were valid and enforceable because "the State retains police powers adequate to authorize the enactment of statutes regulating the withdrawal of shares". *Id.* at 38, 84 L.ed. at 1065, 60 S.Ct. at 794.

> "This power of the State to protect its citizens by statutory enactments affecting contract rights, without a violation of the contract clause of the Constitution, is analogous to the power often reserved to amend charters. Under this reserved power, it is held that the relations between a stockholder or certificate holder and the corporation may be varied without impairing the contract existing between the corporation and its stockholder or member." *Id.* at 40, 84 L.ed. at 1066-67, 60 S.Ct. at 796.

*Appeal dismissed.*